Judge Ewing
delivered the Opinion of the Court.
read purchased of Jones a house aud lot in Bardstown, 1 * for eleven hundred dollars, which was held by Jones in right his wife Lucy, formerly Lucy May; and executed to him his note for the consideration, payable at a future ¿ay, and took Jones’ bond for a good and valid titie, to be made when the note fell due.
Judgment was recovered on said note, and Read filed his bill alleging that Mary May, the mother of said Lucy, held a hen on said fot for her maintenance, and also, that said Lucy, when sole, executed a bond to her mo, , . ther, binding her to release or re-convey said house and [0t to her on request, or pay her a large sum of money, which bond had been assigned to Kitty, another daughter sa*h Mary, an(i D. Sutton, jointly; and prayed that all said parties should be made defendants, and sahi incumbrances cleared away, or the contract dissolved.
Sutton and Kitty May answer the bill, and make their answer a cross bill, against Jones and wife, exhibit and rely on the bond assigned to them, and pray that Jones and wife convey to them.
Jones and wife answered the original bill, before the answer and cross bill was filed, exhibiting a release from Mary May, of any lien which she held on the house an<l lot for her maintenance, and denying the execution or existence of the bond, charged to have been'assigned to Kitty May and Sutton. Afterwards., they amended their answer, and answer the cross bill, alleging that . . 1 ° ° said bond was without consideration and fraudulent and v0^’ t^at *ts existence, when their former answer was filed,was notrecollectcd by said Lucy.
But— As the purchaser, before he has paid the consideration, has notice of the fraud with which his vendor’s title is infected, the estate, in his hands, might bemadeliable for the debt to defeat which that title was made — and unless it is shown that that debt is extinguished, the title is not such as the purchaser is bound to take, and he is entitled to a rescission.
If said bond be good, it having been executed prior to the sale by Jones to Read, it presents an insuperable objection to his title.
To avoid the force of said bond, Jones and wife take evidence to show that it was fraudulent. From that evidence it clearly appears, that Mary May, some ten years before said bill was filed, and some five or six years before the intermarriage of said Jones and Lucy, in combination with said Lucy, to defraud one Meredith, who is alleged to have a debt or demand against said Mary, agreed to convey said house and lot and other property to said Lucy, and that said Lucy was to give her a secret bond to release or re-convey to her, the said house and lot, on demand, or pay her three thousand dollars for the same. To carry out said fraudulent agreement, said conveyance was made and bond executed. That after the marriage of said Lucy with Jones, said Mary May assigned said secret bond to her daughter and son-in-law, Kitty May and Sutton, as an advancement.
From this evidence, it is clear, that the bond from Lucy to Mary May, is an integral part of a fraudulent agreement, made between them to hinder and delay creditors, and especially to obstruct Meredith in the collection of his demand, and a Chancellor should not interpose to afford relief to either. We also believe? that Kitty May and Sutton, who claim under Mary May, especially as they claim as volunteers, cannot be made to occupy more elevated ground, than their assignor. The bond under which they set up their equity, is tinctured with fraud in its emanation, from which it has not been purified by the assignment, and cannot confer on them, a higher grade of equity than it possessed in the hands of the original holder.
We are clear, therefore, that said bond, in itself, is not an outstanding equity which could present any impediment to the complainant’s title.
But Read, now, before he has paid the consideration, or completed his title, has notice of the fraud through which his title emanated: he cannot, therefore, claim the same as an innocent purchaser.
Reversal, for' omissionto decree rents #'c. to the vendors, upon a rescission of the contract.
If Meredith’s debt is yet outstanding and unpaid, thee house and lot in his hands, may be made subject to its payment. Jones, in his efforts to show the fraud, has wholly failed to show that said demand has ever been satisfied, released or extinguished.
For aught that appears to this Court, it is yet outstanding, and may, at some future day, expose the title of Read to imminent hazard.
According to the showing of Jones, we must say, that a cloud hangs over the title, which it was the province and duty of Jones to remove. He has failed to do it. And we cannot feel warranted in compelling Read to accept a title so much exposed to peril from this outstanding incumbrance.
But there is an error in the decree of the Circuit Court, in refusing to decree to Jones and wife a ratable allowance for rent, from the date of the commissioner’s report, up to the time when the final decree was rendered.
Commissioners are sent out to report facts to the Court. The facts reported furnished to the Court the data, upon which an estimate could have been made of the accruing rent, which should have been allowed to Jones and wife. -
For this error, the decree is reversed, and the cause1 remanded, that an estimate may be made of the rents which have accrued, or shall accrue up to the rendition of the final decree, and that the same may be decreed to Jones and wife.