## NELLIS *vs.* CLARK.

Where a contract is entered into for *fraudulent* or *illegal* purposes, the law refuses its aid to enable either party to disturb such parts of it as have been *executed* or carried into effect; and as to such parts as remain *executory*, it will not compel the contractor to perform his engagements or pay damages for non-performance—thus, in both cases, leaving the parties where it finds them. *Accordingly it was held* in this case, that a plaintiff, chargeable with notice, was not entitled to recover in an action on a promissory note given in part consideration of a fraudulent conveyance of land.

It is not necessary to the maintenance of such defence that the facts constituting it should appear on the plaintiff's own showing; it is competent for the defendant to adduce proof on his part.

See the dissenting opinion of the CHIEF JUSTICE.

THIS was an action of *assumpsit*, tried at the Oneida circuit in April, 1846, before the Hon. HIRAM DENIO, then one of the circuit judges.

The plaintiff claimed to recover the amount of a promissory note for $300, made by the defendant, bearing date 13th October, 1828, payable to *William T. Curtiss* or *bearer*, four years after date.   On the part of the defendant it was shown that on the 12th *March*, 1828, *John Buttolph* conveyed to the defendant, by deed with warranty, 56 acres of land, in consideration of the sum of $1,200 : of which $500 were paid down, and the residue secured by a bond and mortgage.   In *October*, 1828, *Buttolph* purchased a lot of land of *William T. Curtiss*, and by arrangement between them and the defendant, the bond and mortgage executed by the defendant were surrendered to him, upon his making two notes to Curtiss for the amount of $700, for the recovery of one of which the present suit is prosecuted.   The notes thus given were subsequently delivered over by Curtiss to one *Beecher*, who had been appointed an *assignee* of *Buttolph* on the latter obtaining his discharge as an insolvent debtor ; Buttolph having re-conveyed the land purchased by him of Curtiss.   In November, 1830, one *Joseph Bruce* obtained judgment in an action of ejectment prosecuted by him against the defendant for the recovery of the 56 acres, and possession was duly delivered to him by virtue of a writ of possession.   In December, 1831, Beecher transferred the notes to *Bruce*, who subsequently transferred them to *Nellis*, the plaintiff in this cause.   Both Bruce and Nellis had notice of the consideration of the notes, and that the land (the consideration of the notes) had been lost by the defendant.   On this state of facts the defendant insisted that inasmuch as the *consideration of the notes* had failed, he was entitled to a verdict.   The judge however ruled, that as it had not been shown that *Bruce* recovered by *title paramount* to that conveyed to the defendant, the latter was not entitled to a verdict.   The counsel for the defendant then *offered to prove*, that *at the time* of the conveyance from *Buttolph* to the defendant, an action of slander was pending in favor of one *Otis* against Buttolph, in which a recovery was subsequently had, judgment entered and execution issued ; that by virtue of such judgment and execution, the 56 acres were sold at public auction, and

bought in by *Bruce,* who thereupon brought the action of ejectment above mentioned, and recovered *on the ground that the conveyance to the defendant was fraudulent* in respect to the creditors of Buttolph, and particularly in respect to *Otis,* the plaintiff in the slander suit, and that thus the defendant was deprived of the premises, for the purchase money of which the note in question was in part given. This evidence was objected to by the plaintiff's counsel, who insisted that it was not competent to the defendant to *allege his own fraud* in exoneration of his liability. The judge sustained the objection, and under his direction the jury found a verdict for the plaintiff for the amount of the note and interest. The defendant asks for a new trial.

*W. Crafts & C. P. Kirkland,* for the defendant.

*J. A. Spencer,* for the plaintiff.

*By the court,* COWEN, J. The question is whether a promise to pay for property purchased with the intention to defraud creditors can be enforced.

I lay out of view the failure of consideration, because I agree that such a purchaser would never be protected on his own account. He would be esteemed guilty of a crime against social policy, and though he had paid the most ample consideration, he could not recover it back. *Jackson, ex dem. Malin* v. *Garnsey,* 16 *Johns. R.* 189, 192. *Bolt* v. *Rogers,* 3 *Paige,* 154. *Perkins* v. *Savage,* 15 *Wendell,* 412. In *Surlott* v. *Beddow,* 3 *Monroe,* 109, it was expressly adjudged that a vendee who purchased to defraud creditors cannot maintain an action for indemnity, against the vendor, by reason of an eviction by an execution, levy and sale at the suit of the vendor's creditor. And the rule is precisely the same, whether the act be declared fraudulent at the *common law* or by *statute,* and the same at law as in equity. *Jackson* v. *Garnsey* related to a statute fraud upon creditors, and was decided at law ; *Perkins* v. *Savage* to a fraud which was declared such on principles of the common law ; and so of *Bolt* v. *Rogers,* the one being at law and the other in equity. The

decided weight of authority, however, is that the fraud upon which we are now called to pass, is so both at common law and by statute. In 3 *Co.* 78, *Fermor's case* it is taken as a general rule, that " the common law doth so abhor fraud and covin, that all acts as well judicial as others, and which of themselves are just and lawful, yet being mixed with fraud and deceit, are in judgment of law, wrongful and unlawful." And in *Cadogan* v. *Kennett, Cowp.* 434, Lord Mansfield said of this very fraud upon creditors, that " the principles and rules of the common law, as now universally understood, are so strong against fraud in every shape, that the common law would have attained every end proposed by the statutes 13 Eliz. c. 5, and 27 Eliz. c. 4." The same thing was said in substance by Spencer, J. who delivered the opinion of the court of errors in *Sands* v. *Hildreth,* 14 *Johns. R.* 498 ; *Sands* v. *Codwise,* 4 *id.* 536, *S. P.* I shall not multiply authorities on what no one will dispute ; but have said so much to avoid all question that the books which deny aid to the party who has been guilty of fraud, do so upon a general principle applicable alike to every species of fraud in whatever forum it may be drawn in question.

I have so far treated the fraudulent contract as if it had been *executed,* as if land had been conveyed and money paid under it ; and the result is, that although Clark lost the land and the money paid, neither law nor equity will ever help him to recover it back. The rule is thus laid down in *Chitty on Contracts,* 214 : " An individual shall not be assisted by the law in enforcing a demand originating in a breach or violation, on his part, of its principles or enactments." *Dedham Bank* v. *Chickering,* 4 *Pick.* 314. *Armstrong* v. *Toler,* 11 *Wheat.* 258. *Bartle* v. *Nutt,* 4 *Pet.* 184. *Perkins* v. *Savage,* 15 *Wendell,* 412, *S. P.* In *Perkins* v. *Savage,* money was advanced by the plaintiff to enable the latter to subscribe for and pay the advance on stock in a newly in-corporated company for the plaintiff's benefit, in a manner which would operate as a fraud upon the provisions of its charter. A balance being unaccounted for, the plaintiff sued to recover it. His right to recover was denied, and Mr. Justice Nelson states the

principle, *in pari delicto, potior est conditio defendentis.* In *Bartle* v. *Coleman,* Mr. Justice Baldwin amplifies the Latin maxim : " The law leaves the parties to such a contract as it found them. If either has sustained loss by the bad faith of a *particeps criminis,* it is but a just infliction for premeditated and deeply practised fraud. He must not expect that a judicial tribunal will degrade itself by an exertion of its powers, by shifting the loss from one to the other, or to equalize the benefits or bur-thens which may have resulted by the violation of every principle of morals and of laws." Again, in *Bolt* v. *Rogers,* 3 *Wendell,* 157, Chancellor Walworth says, " Wherever two or more persons are engaged in a fraudulent transaction to injure another, neither law nor equity will interfere to relieve either of those persons, as against the other, from the consequences of their own misconduct."

Such are the principles upon which Clark, the defendant, stands forever disabled to recover back what he actually paid for this land. He crippled himself by participating with Buttolph in the fraud upon the creditors of the latter. But when Clark comes to turn the same principle upon Buttolph, for it is not de-nied that this defence is, in legal effect, against him, (the plaintiff representing him,) the application of the principle is denied. We are called upon to help Buttolph recover a sum of money which he openly declares is due to him as the wages of iniquity, the consideration of a fraudulent-sale of his land in pursuance of a conspiracy between him and the defendant to defraud Otis and others ; an offence indictable as such at common law under most circumstances, *Best, J. in Doe, dem. Roberts,* v *Roberts,* 2 *Barn. & Ald.* 370, and since made so by statute, without the ingredient of conspiracy.

Why the law should single out the fraudulent debtor, and make him the special object of its favor, we have not been informed upon any authority ; and I think we shall see that we have an abun-dance of authority which will warrant us in holding, that so long as the fraudulent contract is *unexecuted,* the principles cited apply with all their force as well to this sort of unlawful dealing as to any other. Take the case that Clark had agreed with Buttolph to

reconvey the land on his getting clear of Otis and his other credi-
tors.  *St. John* v. *Benedict*, 6 *Johns. Ch. R.* 111, is an authority
that the chancellor would never decree the reconveyance in equity.
There a bill was filed by St. John against Herrington, to enforce
precisely such a contract.  *And see Jones* v. *Read, and  Wright* v.
*Wright, S. P., hereafter cited.*  Chancellor Kent asks, " Shall
this court help a party in the performance of an agreement made
on purpose to defraud creditors?"  He answers, " This court will
not interfere to enforce the specific performance of a contract ini-
quitous and fraudulent in its very foundation."  *Herrick* v. *Grow*,
5 *Wendell*, 579, goes upon the same principle.  Administrators
agreed to procure a surrogate's order, and convey the land of
their intestate at a certain price.  The bond was held void as
being a fraud on the heirs and on creditors.  *Bridgewater* v. *Brook-
field*, 3 *Cowen*, 299, *S. P.*   *Myers* v. *Hodges*,  2 *Watts*, 381, *S.
P.*  In *Bolt* v. *Rogers*, before cited, such an agreement was exe-
cuted and the purchaser paid the price.  On a bill filed by the
heirs, in the vice chancery of the fourth circuit, I set the sale
aside as far as it operated against them ; leaving the immediate
parties to their remedy.  Afterwards, on a bill filed by the purcha-
ser to rescind the bargain, and be restored to the land he had con-
veyed in exchange, I refused to relieve him, because the contract
was an executed one, and the parties must remain where they
were.  That was the decree in question on appeal, in 3 *Paige*,
154.

I have thus placed certain cases in juxtaposition wherein the
courts have refused *to enforce and  also to rescind* agreements in
fraud of the rights of others, when called to act as between the
parties, in order to see more clearly that the refusal in both
instances goes on the same principle ; and, at the same time, to
present the distinction upon which all the like cases have gone.
This distinction is, that where the contract is *executed*, it is, in
effect, binding between the parties, as in *Bolt* v. *Rogers* ; but
where it remains *executory*, it is, as in *Herrick* v. *Grow*, in effect
a nullity.  Both, it will be perceived, depend on the principle
laid down in several books from which I have cited, and others

to be noticed, that the law will not lend itself to aid either party. Such is the common law ; and whether the case before us be considered as arising under that law or the statute, the rule is the same. In *Jackson* v. *Garnsey*, Spencer, J. in speaking of the statute 27th Elizabeth, which, in respect to the effect of a conveyance as between the parties, is the same as 13 Elizabeth, says, " as between the parties they are expressly excluded from its operation ; *and left as they stood at the common law.*" And it may not be out of place to repeat and pursue a little here what I have before attempted to show, that we are standing on common law ground. The statute does not say, that a contract executory shall be binding between the parties. 1 *R. L. of* 1813, 75, § 2. It declares all contracts, both executory and executed, to defraud creditors, *void only as against the latter*. It was wanted for nothing else. It was but declaratory ; and were it not for the 4th section giving additional sanctions, the common law would have reached every purpose. Now had the statute stopped with declaring the contract simply void, it would have changed the common law by avoiding one class, viz. executed contracts, which that law would not interfere with. Therefore the statute withdraws itself entirely from any interference between the parties, with the intent to let the common law take its own course.

I have examined the more anxiously to satisfy myself whether the statute works any change of right between the parties, because, if it does not, then I think we shall see there is an end of this claim upon principle, if not upon direct authority. I feel much strengthened in the conclusion that there is no change, from what was said by Blackford, J., who was opposed to the defence here set up, in *Findley* v. *Cooley*, 1 *Black. R.* 262. He insists it is but a recognition of the common law, except in one particular; and he adds the opinion of Lord Coke, in *Co. Litt.* 290, *b.*, Chief Justice Marshall in 1 *Cranch*, 316, and Chief Justice Kent in 9 *Johns. R.* 339, to those which I have cited. He then refers to *Twyne's case*, 3 *Coke's R.* 80, and *Upton* v. *Basset*, *Cro. Eliz.* 245, as a foundation for supposing that, by the common law, no person should avoid an estate made by fraud, except he who had

a former right, interest or demand ; whereas the statute of Elizabeth, instead of being limited to former interests or demands, makes provision in favor of those which arise subsequently to the conveyance ; and this is according to the suggestion in *Roberts on Fraud. Conv.* 10, 11, and *vid. id.* 641. Blackford, J. adds : " There is not a *dictum* any where for the position, that the English statute is in derogation of the common law. On the contrary, it is either declaratory of the common law or an enlargement of its principles." And he expressly denies that as between the parties, it worked any change at all, though we shall see in the sequel, that the learned judge drew a very opposite conclusion, to that which, with deference, I think follows from the principle which he advances with so much confidence and justice.

It seems to me then, that we can not mistake, in saying we are bound to look at the question before us precisely as if there were no statute on the subject. What conceivable difference, in principle, is there between the cases already cited and the one at bar ? What difference between all that numerous class of contracts, such as bonds or notes given under arrangements to defraud third persons, creditors or others, which have been declared void at the common law, and the note before us ? Marriage brokerage contracts are a familiar instance, because they tend to work a fraud as against a third party who is to be drawn into the marriage. 3 *P. Wms.* 74, *note* (1), and particularly the case there of *Neville* v. *Wilkinson*. Secret agreements for preference under deeds of composition, *Chitty on Contr.* 225, *Case* v. *Gerrish*, 15 *Pick.* 49, or in consideration of withdrawing opposition to the discharge of an insolvent, *Wigging* v. *Bush*, 12 *Johns. R.* 306, or of puffing at an auction, *Chitty on Contr.* 227, are void also as being, in the first cases, fraudulent against creditors, and in the latter against bidders ; and the party sued on such and the like contracts may give the fraud in evidence to show that it is a case in which the law ought not to move. In *Holman* v. *Johnson, Cowp.* 343, Lord Mansfield said, " The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however

that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to real justice as between him and the plaintiff; by accident, if I may so say. The principle of public policy is this, *ex dolo malo non oritur actio.* No court will lend its aid to a man upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa* or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides, and the defendant were to bring his action against the plaintiff, the latter would then have the advantage of it; for where both are equally in fault, *potior est conditio defendentis.*" These remarks cover the whole ground on which Clark the defendant stands, as I attempted to show in the outset; neither he nor Buttolph have any positive remedy on their own account. But as the law finds them, so it will leave them. They derive that kind of negative assistance which arises from their cases being mutually such that the law will not tarnish its hands by rescuing them from the mire.

I have met with but one case at law in which the principles laid down by Lord Mansfield in *Holman* v. *Johnson,* have been either applied or examined as between a vendor and vendee of property for the purpose of defrauding creditors. I will not say there may not be others; but if so, they have escaped my research, which has been made with some pains. The case I allude to is *Smith* v. *Hubbs,* 1 *Fairf.* 71, decided in 1833, by the supreme judicial court of the state of Maine. The action was assumpsit for goods sold by the plaintiff to the defendant's intestate, Hubbs, under an arrangement between both parties with one Weymouth, that he should take the goods in question, with other goods, and open a shop, and sell them out under the name of the intestate, which was lent to cover the goods against Weymouth's creditors. After the plaintiff had proved the sale and delivery of the goods, the defendant was allowed to show the object for which he purchased them,

as a defence; and to make out his case by Weymouth, the fraudulent go-between, as a witness. The jury having found for the defendant, on a motion for a new trial, several questions were made : 1. Whether Weymouth was competent to prove his own turpitude : 2. Whether the matter could be shown as a defence, or whether such a defence must not be confined to a case where the plaintiff himself discloses it by his own evidence. The validity of the defence, when once legitimately introduced and established, appeared to the plaintiff's counsel to be so obvious, that it was not much contested. But a question was made upon the weight of evidence whether the fraud was established, admitting Weymouth to have been a competent witness. The motion for a new trial was denied. Mellen, Ch. J. who delivered the opinion of the court, cited at length the language of Lord Mansfield as I have stated it; but mainly with the view of showing that the matter of defence might as properly come from testimony on the one side as the other ; in either case it would be fatal to the action. Still, speaking in reference to that question, he makes several remarks directly pertinent to the legal foundation of the defence. His words are these : " There is a marked and settled *distinction* between *executory* and *executed* contracts of a *fraudulent* or *illegal* character. Whatever the parties to an action have *executed* for fraudulent or illegal purposes, the law refuses to lend its aid to enable either party to disturb. Whatever the parties have fraudulently or illegally *contracted to execute*, the law refuses to compel the contractor to execute, or pay damages for not executing ; but in both cases leaves the parties where it finds them. The object of the law in the *latter* case is, as far as possible, to prevent the contemplated wrong ; and in the former to punish the wrong doer by leaving him to the consequences of his own folly or misconduct." A due degree of pains seems to have been bestowed upon this case by counsel ; and much consideration by the court which decided it. The decision is moreover entirely in accordance with the principles, the distinctions, and, as I think, the direct illustrations which I have sought to deduce from other cases. From the absence of direct authority in the reported arguments of

both the counsel, as well as the opinion of the chief justice, the case too being so recent, I am led to suppose that my own search for other cases has been baffled by the real barrenness of the books rather than by the want of due diligence on my part.

When I said that *Smith* v. *Hubbs* was the only case I had met with at law, in which the principle *melior est conditio defendentis* had been applied or considered in a case such as we have before us, I was, as it will be remembered, aware that the supreme court of Indiana had in *Findley* v. *Cooley*, 1 *Blackf. R.* 263, *A. D.* 1823, decided exactly such a case, and repudiated the defence here set up. The action was brought by Cooley, against Findley, on several promissory notes, in the circuit court; and the defendant pleaded specially, that they were executed by him to the plaintiff as the consideration of land conveyed by the latter to the former with intent to defraud a Mrs. Walden of her damages in a pending action of trespass against the plaintiff. On demurrer, judgment was for the plaintiff in the circuit court, and on error by Findley, Blackford, J. delivered the opinion of the supreme court. He said the great defect in the pleas was, that it was *not a creditor* of the vendor, but a *party to the conveyance* who complained of its being fraudulent and void ; and he proceded to show, what I admit cannot be controverted, that fraudulent conveyances have always been considered binding on the parties. He then discusses the question, as I before mentioned, whether the statutes of either the 13 or 27 Elizabeth have at all altered the rule as between the parties ; and infers that they have not ; against which I am sure he was right in saying, there is not so much as a dictum. He adds, " We barely refer to some of the authorities, to remind the counsel for the defendant that, if the statute of Elizabeth does not authorize his client to *treat as void this conveyance to which he was a party,* which was admitted on the argument, his appeal to the principles of the common law is beyond the possibility of success." The authorities referred to were those which held the *conveyance* good at common law as between the parties. Thus the defence was argued and decided on the effect of the *conveyance* which

was the *executed contract*, and not the notes which were the *executory* contract. And it was in respect to this, that I said the rule *potior est*, &c., had not, as between such parties, been applied or considered. The rule is not once alluded to in any form. Had the attention of the learned judge who delivered the opinion been turned, as that of Mellen, Ch. J. was, in *Smith* v. *Hubbs*, to the remarks of Lord Mansfield, I can hardly doubt that he would have concurred with the chief justice. With deference I repeat, the question was not whether the *fraudulent deed* was valid. In what sense was that good? By accident, says Lord Mansfield; not for the purpose of operating as a consideration, for the very conveyance was immoral and illegal, as much so as if the consideration had been prostitution. Suppose the tea contract in *Holman* v. *Johnson* to have been a fraud on the revenue; the law would not, according to Lord Mansfield, have set aside the sale of the tea, had the parties changed sides, But yet it would have afforded no remedy for the price, and it would have denied both, because *ex turpi causa non oritur actio*.

In *Stewart* v. *Kearney*, 6 *Watts*. 453, 5, Gibson, Ch. J. says of a sale to defraud creditors, "The law not only sustains the contract when *executed*, but *enforces it when executory*." But the sale in question was executed, and trover brought by the vendor to recover the goods. The case he cites for *enforcing* the contract, *Montefiori* v. *Montefiori*, 1 *W. Black*. 364, went on another principle—that of *estoppel in pais*. When Lord Mansfield there says, "No man shall set up his own iniquity as a defence, any more than as a cause of action," he must be understood as confining his remarks to a defence against an *innocent party*. Such was the case before him. The defendant had given his note to the plaintiff, his brother, to enable him to draw in a female to marry him, which she did. The note falsely acknowledged a large value in the defendant's hands, and enabled the plaintiff to succeed in his designs upon the female by representing himself as a man apparently of large fortune. In a suit by the husband the court held the defendant to his note for the benefit of the innocent female. It is put on the same ground as if the fortune repre-

sented to exist had been settled on the female by marriage articles ; and it is said, in either case, the suit must be in the husband's name.   To take the general doctrine unqualifiedly as there laid down, would contradict the whole current of English authority, and several cases decided by Lord Mansfield himself. The doctrine is also too broadly laid down in *Potter* v. *Yale College*, 8 *Conn. R,* 52, 62; indeed as broadly as would be the proposition just examined.   The cases there cited, of *Philips* v. *Biron*, 1 *Str.* 509, *and Smith* v. *Bouchier*, 2 *id.* 993, are merely that where two join in pleading a justification, the matter must be a good justification for both, not for one only ; otherwise the plea is bad.

The point before us has been lately examined on the equitable side in the court of appeals of Kentucky. · *Jones* v. *Read,* 3 *Dana,* 540, *A. D.* 1835.   There a debtor, Mary May, in order to cheat her creditors, conveyed to her daughter Lucy, taking back a secret bond for re-conveyance.   Lucy married, and her husband sold the land to Read, who gave his note for the purchase money, but filed his bill to avoid it, because the bond raised an adverse equitable claim in the obligee.   Ewing, J. delivered the opinion of the court.   He said the bond was fraudulent in its emanation ; and a chancellor should not interpose to afford relief to either party.   No authorities are cited ; but the case is evidently an application of the principles which I have supposed to govern.   It is more pertinent, as the mother's assignee was made a party defendant, and insisted on the bond as valid.   The principle is also fully stated and approved in a case at law in the supreme court of North Carolina, by a *dictum* of Ruffin, J. in *Waller* v. *Niles*, 3 *Dev.* 519.   On the same principle a court of chancery refused, as between the parties to such a fraudulent deed absolute on its face, to change it into a 'mortgage, pursuant to the agreement of the parties.   *Wright* v. *Wright,* 2 *Litt. R.* 8, 12.

From the degree of examination I have been enabled to bestow upon the subject, I can not bring myself to doubt, that the note in question is among that class of contracts which the law will

not enforce, on account of their corrupt origin. I am sure it is in vain to speculate, *ab inconvenienti*, whether such a result will, being known as the law of the land, have an influence either to discourage or multiply such fraudulent practices. To say that notes given upon such a consideration as this shall be enforced, was acknowledged by the plaintiff's counsel to be without any precedent which they could produce.

It is said the defence can be allowed only where the facts must necessarily make a part of the plaintiff's own proof, and for this we are referred to what Gibbs, Ch. J. said in *Simpson* v. *Bloss*, 7 *Taunt.* 249, 250. As this objection was very fully considered, and refuted on abundant authority, by Mellen, Ch. J. in *Smith* v. *Hubbs*, I shall content myself with referring to his argument there. The question put by counsel, (as if that would present an analogous case,) suppose that the defendant had paid the money, instead of giving his notes, could he recover it back? is the question, as it will be seen, to which we have fully directed our attention, and answered no ; because that would be an *execution* of the contract, and drive the defendant, in the words of Lord Mansfield, to change sides. That makes the fatal difference. On the whole, my conclusion is, that there should be a new trial, the costs to abide the event.

Mr. Justice Bronson, concurred.

The Chief Justice dissented, and delivered the following opinion :

I am of opinion that the plaintiff is entitled to his verdict on the note in question, notwithstanding the want or illegality of consideration urged against it. In my view of the case, neither has been established ; and to be satisfied of this, it seems to me only necessary to distinguish between an *illegal contract* in the strict sense of that term, and one *fraudulent* as it respects creditors. The former is altogether void, and cannot be made the foundation of an action. *Ex dolo malo non oritur actio.* "You

shall not stipulate for iniquity," says Chief Justice Wilmot in *Collins* v. *Blantern,* 2 *Wils.* 341, " for no polluted hand shall touch the pure fountains of justice." This class of contracts is well assigned, and illustrated in the books. 1 *Comyn on Cont.* 31, 46. 2 *Saund. on Pl. and Ev.* 576, *and cases there cited.* They form an exception to the rule applicable in general to the dealings of mankind, namely, that no person shall take advantage of his own wrong. The reason for it is given by Lord Mansfield in *Holman* v. *Johnson,* *Cowp.* 343. " The objection," he observes, " that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed ; but it is founded on general principles of policy, which the defendant has the advantage of, contrary to the real justice as between him and the plaintiff. If from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes ; not for the sake of the defendant." All this is quite clear and satisfactory.

But in respect to the other class, that is, contracts *fraudulent* under the statute, 2 *R. S.* 137, § 1; 13 *Eliza. c.* 5, they are void only " as against the persons hindered, delayed or defrauded :" not altogether void ; they are binding upon the parties. *Cro. Jac.* 271. *Hawes* v. *Leader, id.* 270. 7 *Johns. R.* 167. 16 *id.* 189. When the question is between them, the rule *ex turpi causa* does not apply, and therefore, neither can urge the corrupt intent as to the creditors by way of imparing their obligation. Buttolph could not have urged this view in answer to a bill filed to compel the execution of the deed, nor the defendant resist taking it and paying the stipulated consideration.

My brethren have expressed the opinion that this rule is applicable only to *executed contracts.* But as early as the case of *Hawes* v. *Leader,* it was held otherwise. There one C. had sold certain goods to the plaintiff for £20 paid, and bound himself to keep them safely, and deliver them on demand. C. died some

four years afterwards, and the plaintiff demanded the goods of the defendant, the administrator, who refused to give them up, upon which the action was brought. The defendant pleaded the statute of 13 Eliz. in due form, to which there was a demurrer, and judgment for plaintiff. It is there said the defendant is not such a person as is enabled by the 13 *Eliz. c.* 5, to plead that plea; for the statute makes the deed void as against creditors; but not against the party himself, his executor or administrator; against them it remains good. This has been, as I understand it, the received construction of this statute, ever since the decision of this case, (1608.) It is also reported in *Yelv.* 196. *See also* 3 *Bac.* 313, 314, *tit. Fraud, C.* 13 *Vin.* 520, *tit. Fraud, F.*, *pl.* 8 *and* 11. *Shep. Touch.* 67. 10 *Coke*, 57. 6 *id.* 19. 3 *id.* 82. 1 *Taunt.* 381. 2 *Barn. & Adol.* 376. 2 *Saund. Pl. and Ev.* 528.

It was said on the argument that the subsequent application of the property to the payment of the creditors, by operation of law, has changed the legal features of the case, as the vendor has thereby realized the whole benefit of the article sold, and the vendee of course has been deprived of it. Still this cannot make the contract illegal in the sense which renders it absolutely void, as the application is only the practical result of the *taint* before assumed to exist, notwithstanding which it was deemed valid as between the parties. As to the creditors, it was void from the beginning, and that is all that can be urged against it since the enforcement of their claims; for whatever of the fund may be left after satisfying them, belongs to the vendee as owner. He takes it by virtue of his title under the contract.

Again it is said, if the contract is not illegal so as to forbid the recovery, there is a *failure of consideration* arising from the interference of the creditors. This question depends upon the nature of the contract itself. If the title had failed upon an eviction by title paramount, the defendant could not have set up this by way of defence, unless there had been a warranty express or implied, or fraud on the part of the vendor; nor, which is the same thing, sustained an action to recover back the consideration

paid. 2 *Caines,* 188. *Sugd. on Vend.* 337. *Id. on Sales,* 23, 24. 1 *Jac. & Walk.* 556. 3 *Munf.* 243. In the absence of either, the vendee is deemed to have taken upon himself the risk of the title as a part of his contract. But here has been no eviction by title paramount, and therefore it is quite immaterial what may have been the covenants in the deed, or representations at the time of the sale. Neither is any defect of title at the time of the sale pretended ; indeed, we may say, from the ground upon which this defence is placed, it is conceded to have been good ; for the only defect set up or relied upon, is one that arose out of the purchase itself, made by the defendant, and which implies that previously to that time the title was unexceptionable. Then, is there any general principle upon which the vendor can be made responsible for this ground of failure ? There is certainly no covenant by him express or implied against the defect ; and there can be no fraud, because we know that the eviction could not have taken place without proving that the vendee knowingly participated in that which has defeated his title. Without proof of such knowledge, there could have been no recovery against him. He took the title with full notice of the defect, and there is, therefore, no rule applicable to the construction of contracts which would make the vendor responsible under such circumstances. The case falls within the familiar principle, that imposes upon the purchaser the responsibility of any defects in the article of property whether real or personal, when he takes it with full knowledge, and without guarding against it by his contract.

The defects in such cases enter into the contract and are presumed to modify it by reducing the price of the article sold ; in this way the purchaser provides for the risk, or diminished value of the goods. The land is sold with a cloud upon the title : and the goods as unmerchantable. The price is adjusted accordingly, and neither party has cause for complaint. I presume in the case under consideration the defendant provided for the risk against the claims of the creditors, by an abatement of the full value of the land ; or if he did not, it was his own folly.

In any view that I can take of the case, the plaintiff is entitled

to recover, though he stands in no better situation than Buttolph on all grounds : 1. That the contract is legal as between themselves ; and 2. There has been no breach of it shewn. This result is also in harmony with the soundest principles of public policy; for were we to permit the purchaser in fraud of creditors to set up the intent with which the conveyance was executed as a defence to the payment of the purchase money, the fraud could be practised without hazard. All that would be necessary to escape it, would be to extend the payment so as to ensure the experiment by creditors, before it became due.

I am of opinion that a new trial should be denied.

A majority of the court, however, being of a different opinion, a new trial was granted.

New trial granted.