Thurman, J.
The action below was debt on a single bill obligatory executed by the intestate, Jacob G-ebhart, to said Osea G-ebhart; plea, non est factum, with a notice. On a trial by jury Osea G-ebhart, the plaintiff below, gave the single bill in evidence and rested. The administrator, defendant below, thereupon gave evidence tending to prove that the obligation was executed by Jacob as the consideration, or pretended consideration, of a sham sale of Osea’s personal property to Jacob for the purpose of placing the same beyond the reach of. Osea’s creditors. The testimony being closed the .administrator asked the court to charge the jury that if they found that the obligation was given under the circumstances, and for the consideration and purpose aforesaid, the action could not be maintained, which charge the court refused to give, and, on the contrary, charged the jury, in substance, that such an agreement, though void as against the creditors of Osea, was valid as between the parties, and would constitute no bar to a recovery on the obligation. To which refusal to charge, and the charge as given, the administrator excepted, and he now assigns the same matters for error. ’The question is thus presented whether an action can be maintained iby the obligee against the obligor, on a bond given as the consid *227 eration of a sale made to defraud creditors; both of them being parties to the fraud. What is the common law on this point appears to be somewhat doubtful.
In Findley v. Cooley, 1 Blackf. 262, which was a suit on a promissory note, the court said: “ By the common law, and the statutes Ed. 3 and Hen. 7, as well as by the statutes 13 Eliz., conveyances to defraud creditors are not absolutely void. They have always been ■considered binding on the parties. Whether the statute 13 Eliz. ch. 5, is merely declaratory of the common law, or an extension of its operation, is rather an unsettled question.” And judgment was given for the ^plaintiff. But it is to be observed that no notice was taken by the counsel, or court, of the distinction between executed and executory contracts. A conveyance is an executed contract, and it is true that, as between the parties, it will not be disturbed. Such is the common law, such is the statute of Eliz., and such is our own statute as construed in Burgett v. Burgett, 1 Ohio, 460. But it does not follow that an executory contract, tainted with fraud, will be enforced. In equity we know it will not. The decisions are almost, or quite, uniform to this effect. In -St. John v. Benedict, 6 Johns. Chy. 117, Chancellor Kent said: “Shall this court help a party in the performance of an agreement mad* on purpose to defraud creditors ? The arrangement between the plaintiff and H. was confessedly made to defraud that purchaser [the purchaser at sheriff’s sale,] as well as other creditors; and this court will not interfere to enforce the specific performance of a contract, iniquitous and fraudulent in its very foundation.” See also Jones v. Read, 3 Dana, 540.
It may be said that chancery refuses relief because the party seeking it comes with impure hands ? But why impure ? What stains his hands ? The answer is, the illegal contract he has made; the fraud he has perpetrated, or attempted to perpetrate. But why should that be deemed a fraud in a court'of equity and not in a court of law ? What good reason can be given for such a distinction? Why should the plaintiff be allowed to recover on this bond because it is for the payment of money, when, if it was for the conveyance of land, no chancellor would decree its specific execution ? There may be fanciful reasons for such a diversity, but what solid reason can be given for it ? It is true that there are circumstances of extortion, oppression, or undue advantage, which warrant a chancellor in denying his aid to the *228 oppressor, that would not, if the matter could be litigated in a court of law, afford a legal defense. But I apprehend that a court of law does not, any more than a court of equity, sit to enforce agreements that are fraudulent, immoral, or against public policy. “ Where-ever,” said ^Chancellor Walworth in Bolt v. Rogers, 3 Paige, 157, “ two or more persons are engaged in a fraudulent transaction to injure another, neither law nor equity will interfere to relieve either of those persons, as against the other, from the consequences of their own misconduct.” In Roll v. Raguet, 4 Ohio, 419, which was an action at law on a promissory note, the defense was that the-note was given as a consideration for the suppression of a criminal prosecution, and it prevailed. The court said: “ We may adopt the-language of Lord Mansfield, Cowp. 341, that the objection that a contract is immoral or illegal, as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed ; but it is founded on general principles of policy, that ex dolo malo non oritur actio. No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act.”
And again the court say: “ Whenever an agreement appears to' be illegal, immoral, or against public policy, a court of justice leaves the parties as it finds them; if the agreement be executed, the court will not rescind it; if executory, the court will not aid in its execution.”
But it is urged that a sale of property is not, per se, either illegal, immoral, or against public policy, and that if the intent of the transaction be to defraud creditors, it íb only as against them that it is illegal, immoral, etc. I confess I can not attach much weight to this refinement, which dissects a transaction and finds it very upright and laudable for one purpose and very corrupt and illegal for another. To my apprehension, the fraudulent motive is the very gist of the agreement, and taints the whole of it. A contract to build a house is, in itself, perfectly innocent; but if the house is knowingly built for an unlawful purpose the builder can not recover for his work. So it was ruled in Spurgeon v. McElvain, 6 Ohio, 444. The court said: “ The principle is of general apjfiication, that contracts contrary to sound morals, public policy, or forbidden by law, will not be executed by ^courts of justice.” And again, “ if one intend to aid another in an illegal object, he shall not be assisted by the law.”
*229 In Nellis v. Clark, 20 Wend. 24, the very question under consideration was thoroughly considered, and it was held thut, “ where a contract is entered into for fraudulent or illegal purposes, the law refuses its aid to enable either party to disturb such parts of it as have been executed or carried into effect; and as to such parts as remain executory, it will not compel the contractor to perform his engagements, or pay damages for non-performance—thus, in both cases, leaving the parties where it finds them ; and therefore, a plaintiff, chargeable with notice, is not entitled to recover in an. action on a promissory note given in part consideration of a fraudulent conveyance of land.” The statute of frauds of New York, in force when the above note was given, was substantially the same .as that of Elizabeth, and therefore, so far as the statute provided, the contract was void only as against creditors. But the court were of opinion that, at common law, and wholly independent of the statute, no action would lie on the note in favor of the payee, or an indorsee with notice—and this upon the general principle that “ ex turpi causa non oritur actio." A similar decision was had in Smith v. Hubbs, 1 Fair. 71. At the same time it is not to be denied that there is very respectable authority upon the other side; but we have found no case upon the point that seems to have been •so well-considered, and is so consistent with the adjudications of •our courts, as Nellis v. Clark, above cited. We should, therefore, even if our statute of frauds was precisely similar to that of Elizabeth, come to the conclusion that the action below could not be maintained if the facts are as the testimony tended to prove them. But our statute is not in terms the same as that of Elizabeth. The latter statute only declares the corrupt agreement void as against third persons who are, or may be, injured by it. As to the parties themselves, it leaves them to the common law. But our statute is unlimited in its terms. It enacts “ that every gift, grant or conveyance of lands, tenements, *rents, goods, or chattels, and every bond, judgment, or execution, made or obtained with intent to defraud creditors of their just and lawful debts or damages, or to defraud or deceive the person or persons who shall purchase such lands, tenements, hereditaments, rents, goods, or chattels, shall be deemed utterly void and of no effect.” Swan’s Stat. 422. If these words are taken in their ordinary literal signification, they make both executed and executory contracts void, and not only as against creditors, but also as between the parties themselves. But *230 in Burgett v. Burgett, 1 Ohio, 469, the court held that a conveyance for the purpose of defrauding creditors is not void except against creditors or subsequent purchasers, and this decision has been followed ever since. We have no disposition whatever to disturb it. To do so might be productive of infinite mischief. But, on the-other hand, we are not disposed to extend it beyond -the point decided. The decision was that an executed contract, a conveyance, is good as between the parties to it, though void as to creditors. But the question whether an executory contract made to defraud creditors will be enforced as between the parties, is left untouched. It is true that some of the reasoning of the court is to the effect that our statute is, in substance, the same as that of Elizabeth, but we repeat that the 'decision had reference to an executed contract, and to no other. The same remark will apply to the cases cited from 18 Ohio, 418. Tremper et al. v. Barton, and The Same v. The Heirs of Morris. Both these were cases of executed contracts, conveyances of land. In Brown & Co. v. Webb, 20 Ohio, 389, also cited, the point under consideration was not involved.
Another question remains to be considered, namely, whether the-defense in question .is limited to cases where the facts are disclosed by the plaintiff’s testimony. It is a maxim of the law, counsel say, that no one shall be permitted to aver or prove his own turpitude ; and some elementary works and cases are cited where the proposition is thus stated. But an examination of the authorities will show *that this statement is too broad. The true rule is that no one is' allowed to set up his own iniquity to defeat an innocent person. But where the parties are particeps criminis, the-proof may come from the defendant. See Smith v. Hubbs, and Nellis v. Clark, supra. The views we have exjnessed render it. unnecessary to consider the other points made in the case. A majority of the court are of opinion that the charge to the jury was-erroneous, and the judgment must therefore be reversed.

Judgment reversed.

' Caldwell, C. J., dissented.