By the Court.—Sedgwick, J.
On the trial of this action the plaintiff gave evidence that one Besson sold and delivered the property in controversy to him in consideration of certain promissory notes made by him, and of the surrender to Besson of the latter’s note ($1,200), on which the plaintiff had at a former time advanced the face. The defendant gave evidence that he had taken the property under an attachment and execution against Besson’s property, issued in behalf of a creditor of the latter. Evidence was given sufficient to take the case to the jury, on the issue as to the sale to the plaintiff being fraudulent against Besson’s creditors. It was shown that Besson was indebted in a large sum to his wife, and had delivered the plaintiff’s notes to his wife on account of that indebtedness. At the time of the trial Mrs. Besson held these notes.
The defendant’s counsel asked the court to charge that if the sale and purchase was made with intent to hinder, delay, and defraud creditors, the notes which were given on account of the purchase.could not be recovered by the holder.
Undoubtedly in cases like this the exact character of what the purchaser gives for the property is a matter that the jury must weigh. In determining from circumstances whether the plaintiff had notice of a fraudulent intent on Besson’s part, the jury might consider the fact that the law, which the plaintiff was presumed to know, would not make him liable upon promissory notes he might give on a fraudulent purchase by him, except they were transferred and taken bond fide for value. At the time of the purchase, before it was completed, and still when the plaintiff had made up his mind to give the notes, there were various possibilities as to the direction these notes might take. They might go into the hands of a bona-fide holder or they might go into the hands of a person who would not be such' a holder. The jury was to look at the plaintiff’s mind to see if it *369 was influenced hy such, a consideration. His purpose and intent would thus he investigated in view of all the facts, one of which would he the actual liability he incurred on the one hand if the sale was valid, or on the other if it were invalid. We can see that this is just, if we suppose that a jury was told not to regard the circumstance that a purchaser had given money, which he could not recover if the sale were a fraudulent one. If the jury had been instructed as to whether Mrs. Besson is a boná-fide holder, as to whether she could enforce the note's more than Mr. Besson, and as to whether, if the sale were a fraudulent one on the part of both plaintiff and Besson, the latter could collect the notes from the plaintiff, it could have the better judged of the motives of the plaintiff when he formed the purpose of giving his promissory notes for the goods. It is hardly necessary to say that the jury should not consider such a circumstance as conclusive of itself against the plaintiff. It would he hut one fact, to which a proper and not an undue weight should be given.
The request, as I understand it, did not assert that in case of a fraudulent sale and purchase, the notes would not give a right of action against the plaintiff* to any holder whatever, hut that they could not he recovered on hy the holder, that is, the wife of Mr. Besson, who was the holder.
It does not seem to me to he a defect in the request that it was made without also stating the mode in which the jury should use its propositions in finding the relation of the plaintiff to the purchase, whether it was bond fide or the reverse. If the request was right in its meaning, the jury had only to make such use of it as would he made of any other charge of a judge.
.Hor does it seem to me to he a defect in it that it referred to the rights of a person receiving the note after the sale was consummated, and whose rights could not affect the plaintiff’s good faith at the time of the sale, *370 unless it was shown that he had notice that the notes were about to go into the hands of Mrs. Besson. We have said that the possibility that the notes might go ■ into the hands of a holder like Mrs. Besson might properly be weighed by a jury. When that possibility has become a reality, a jury is not misled by a court using the fact for the purpose of stating the legal rule which is to be considered by them. We can believe that a jury might, in case - it chose to violate its duty, make an improper use of the fact that the plaintiff would not be obliged to pay the notes, but that would not result from anything in the request.
We think the request was correct. Mr. Besson gave the notes to his wife “on account of what he owed ” her. It does not appear that any part of that indebtedness was satisfied or discharged, and under Bank of St. Albans v. Gilliland (23 Wend. 311), this would not make her a holder for value, even if the rule stated in late cases was not applied, viz., that a person taking notes as security for or in payment of an antecedent debt where no security is surrendered, or new credit given, is not a bona fide holder for value (Taft v. Chapman, 50 N. Y. R. 448 ; Weaver v. Barden, 49 N. Y. R. 286; Lawrence v. Clark, 36 N. Y. R. 128).
If, as the request stated, the sale by Besson and the purchase by the plaintiff were fraudulent and illegal, notes given for and in consideration of such sale and purchase did not give Besson a right of action against the plaintiff (Nevir v. Best, 10 Barb. 369 ; Nellis v. Clark, 20 Wend. 24, and 4 Hill, 424 ; Johnson v. Morely, Hill & D. 29 ; Moseley v. Moseley, 15 N. Y. 334; Merrick v. Butler, 2 Lans, 103).
The surrendering by plaintiff to Besson of the latter’s note for $1,200 was, I think, a valuable consideration, to that extent at least. The cases cited above to the proposition ■ that a note received as security for or in payment of an antecedent debt is not given for a valúa *371 Tble consideration, were not intended to reverse Brown v. Leavitt (31 N. Y. 113); Pratt v. Coman (37 N. Y. R. 440); The Park Bank v. Watson (42 N. Y. R. 493);
Paddon v. Taylor (44 N. Y. R. 374), and other cases which hold that delivery to a debtor of his note past due, and its cancellation, is a valuable consideration, and it is said in the last case that whether the note surrendered is past due or not due is of no importance. In such case, there is a security delivered. Although such was the effect of delivering up the $1,200 note, still the nature of the rest of the consideration given was to be considered by the jury. I therefore think that the request to charge should have been granted.
The court was right in refusing to charge in substance, if Besson made the transfer for the plaintiff’s notes with a view of placing his property out of reach of legal process and to compel the plaintiff to take the notes, that the transfer was void. This is based upon the proposition, that if Besson meant to defraud his creditors, the plaintiff was not liable upon his notes, and therefore, not being a purchaser for a valuable consideration, was not protected by the statute.
In case of a sale fraudulent against creditors, the statute enacts that no part of its provisions shall affect the title of a purchaser for a valuable consideration, unless he had previous notice of the fraudulent intent of the vendor. There is no necessity of construing this to mean that the jury must in the first instance determine if a valuable consideration had been paid, before they determined if the purchaser had previous notice of the vendor’s fraudulent intent. It would be sometimes, as in the present case, proper first to inquire if there were any previous notice of the fraudulent intent. From the necessities of the case, the jury might not have, in passing upon that, the benefit of knowing the real character of the consideration paid, i. e., an important fact would primarily be left for a time in doubt. If it, *372 should be found to be the fact that the purchaser had no notice of the fraud, affirmed his title to the goods to be perfect, and maintained his own liability on the notes not only to bond fide holders, but to the payees, it seems to me that there would be no evidence on which the jury could say that the purchaser was not liable on his notes to the payees, and that such notes did not form a valuable consideration. «
The first request to charge was refused, and exception taken. It was “the sale of an entire stock of goods, ' which is liable to execution, of a debtor who is embarrassed or who anticipates that he cannot meet the payment of his debts when and as they become due for the ¿dies of a person of limited responsibility as compared with the amount of the property transferred, having a long period to run, with the intention of turning over the notes, is void, irrespective of the question of fraudulent intent.” The request referred to matters of fact for the jury, and did not involve only questions of law- (Loeschigk v. Bridge, 42 N. Y. R. 421).
The charge of the learned court was not excepted to but in one particular. The court said that when a sale and purchase were made with intent to defraud creditors, the whole transaction was void, “ that is, provided that intention existed upon the part of the purchaser as well as of the vendor.” This proviso was excepted to. Taking this literally, there is no doubt that it is correct as far as it goes, but beyond this, if we look at the whole charge, it appears that the jury was properly instructed that the statute protects only purchasers for a valuable consideration who had no previous notice of the fraudulent intent.
As the request first discussed here should have been granted, the judgment should be reversed and a new trial ordered, with costs to appellant to abide event.
Mokell and Curtis, JJ., concurred.