PERKINS *vs.* SAVAGE.

Where a contract is entered into between two parties, the object of which is
to *violate the provisions or the spirit and policy of a public statute,* and one
pays money to the other in furtherance of such contract, and the contract
is in part executed by the accomplishment in part of the original design,
leaving however a portion of the money advanced unexpended, an action
will not lie to *recover back* the unexpended balance.

THIS was an action of *assumpsit,* tried at the New York
circuit in January, 1835, before the Hon. OGDEN EDWARDS,
one of the circuit judges.

The plaintiff proved a receipt for $500, given by the de-
fendant, by the terms of which the plaintiff insisted the de-
fendant was bound to account to him for that sum ; and so
the circuit judge ruled, on a motion for a nonsuit. The defend-
ant then *offered to prove* that the $500 specified in the re-
ceipt was the balance of $3000 received by him from the plain-
tiff, for the purpose of enabling him to subscribe for *stock* of
the *Utica and Schenectady Rail Road Company,* on the
opening of books for subscriptions to the stock of the company ;
which subscriptions were to be made *in the name of the defend-
ant* and in the names of such other persons as he *should pro-
cure to subscribe,* but for the *benefit of the plaintiff,* to whom
the stock which should be apportioned by the commissioners to
the defendant and to such persons as he should procure to
subscribe, should be transferred immediately after such appor-
tionment ; and that, in pursuance of such agreement, various
subscriptions were *made* and *procured to be made* by the de-
fendant, and that the stock apportioned upon such subscrip-
tions had been transferred to the plaintiff, leaving the $500
specified in the receipt *unaccounted for by the defendant to
the plaintiff.* Part of the evidence offered consisted of *letters*
from the plaintiff to the defendant. The counsel for the plaintiff
objected to the introduction of such evidence, and the judge
rejected it, deciding that it was inadmissible ; that the evi-
dence would not show a transaction *prohibited by law,* or a
transaction so far illegal or improper as to preclude the plain-

tiff from recovering back the money advanced to the defendant. The defendant excepted to the decision of the judge. The jury found for the plaintiff for the $500, with the interest thereof. The defendant asks for a new trial. The cause was submitted on written arguments.

*C. B. Moore & R. H. Morris,* for the defendant, insisted that the evidence offered should have been received, as it would have shown that the contract between the parties was in violation of the general laws of public policy, and that each party being *particeps criminis,* an action cannot be maintained to *recover back money* paid by one to the other. In support of this proposition, they cited *Douglas,* 697, 6 *Cowen,* 432, *Cowper,* 39, 5 *Johns. R.* 334, *per Thompson, J.,* 1 *Hopkins' Ch. R.* 26, 3 *T. R.* 454, 4 *id.* 466, 5 *id.* 499, 8 *id.* 548, 575, 14 *Johns. R.* 146, 6 *id.* 194, 8 *id.* 304, 444, 13 *id.* 112, 3 *Caines,* 213, 4 *East,* 372, 1 *Hopkins' Ch. R.* 591, 1 *Edwards' Ch. R.* 364, 4 *Paige's Ch. R.* 255, 9 *Wendell,* 178, 3 *Cowen,* 299, 5 *Wendell,* 579.

*J. W. Gerard,* for the plaintiff, contended that the transaction between the parties was not of that illegal character which would justify the defendant to retain the money. He insisted that the transaction was not *malum in se,* because there was nothing in it immoral, or involving any species of turpitude. It was not against *public policy,* because the practice of obtaining stocks in the manner resorted to in this case was common and well known, and had never been condemned by our courts, or prohibited by the legislature; but if deemed a contract against public policy, he contended that the only effect of such conclusion was to *avoid the contract,* and not to justify a party who had received money under it in refusing not only to perform the contract, but to return the money. The forfeiture of the money, he insisted, took place only where the contract was *malum in se* or *malum prohibitum;* in support of which proposition, he cited 8 *Cowen,* 20, 7 *T. R.* 535, 2 *Bos. & Pul.* 467, 9 *East,* 49, 4 *Taunton,* 474, 5 *T. R.* 405, 11 *Johns. Rep.* 23, 7 *Price,* 540, 8 *Barn. & Cress.* 221. Besides, this action he said was in *disaffirmance* of the con-

tract, against the *agent* of the plaintiff, and not against a third person, with whom the alleged illegal contract was made. And thirdly, he insisted that the transaction was not *malum prohibitum ;* that we have no *statute* prohibiting the procuring of stock by the means used in this case ; but if there was a prohibition, no other consequences could result to the party offending than those prescribed by law, which in this case was not a forfeiture of the money paid.

*By the Court,* NELSON, J. By the act incorporating the Utica and Schenectady Rail Road Company, the sum of *five dollars* on each share of the stock subscribed for, was required to be paid at the time of making the subscription ; and in case of a subscription to more than the amount of the stock authorized to be created, it was the duty of the *commissioners* named in the statute to *apportion* the stock among the subscribers in such manner as should be deemed most advantageous to the interests of the corporation. *Laws of* 1833, *page* 462, §45. The question presented in the case is, whether the contract offered to be proved by the defendant, and which was rejected by the circuit judge on *the trial, was made in violation of any of the provisions, or of* the spirit and policy of the statute incorporating the Utica and Schenectady Rail Road Company. If it was so made, I am of opinion the plaintiff cannot recover. 5 *Johns. R.* 334. 6 *Cowen,* 431. I assume, that in the offers made, the defendant proposed to prove not only the *contract* which was rejected, but that the subscriptions *exceeded* the amount of the capital stock. The case is not very explicit upon this point, but enough appears to warrant the inference. The money sought to be recovered was advanced to the defendant, in pursuance of the contract, and it is by virtue of its terms, either express or implied by law, that the action must be sustained, if it can be at all. This is not an attempt by the plaintiff to avail himself of a *locus penitentiæ,* to retrace his steps, and disaffirm an unlawful agreement, while it is yet executory ; the illegal purpose or act has been executed, and the effect of a recovery is to enable him to realize a part of the fruits of it, by enforcing a performance by the defendant. The defendant was

bound to invest the whole of the money in stock; or if he failed in this, the balance was to be refunded, and a transfer of the stock procured, made to the plaintiff. The obligation to do both arises out of the contract, and it is in vain to distinguish between this action and one to recover the value of the stock, if there had been a refusal to transfer it. If, under the express or implied obligation to refund the balance of money unexpended, the plaintiff can sustain the action, it is impossible, I think, to contend against a compulsory transfer of the stock upon the same principle. In each case the validity of the contract is recognized, and its provisions enforced.

It is supposed, however, by the counsel for the plaintiff, that if the contract is conceded to be illegal, as against the policy of the act of incorporation, still the only consequence is to avoid it; and that the money placed in the hands of the defendant, in pursuance thereof, may be recovered back. He has referred to a number of cases, for the purpose of supporting this proposition. *Utica Ins. Co.* v. *Kip*, 8 *Cowen,* 20. *Lacaussade* v. *White,* 7 *T. R.* 535. *Tassenden* v. *Randall,* 2 *Bos.&Pul.*46. *Taylor* v. *Lendy,* 9 *East,* 49. *Smith* v. *Blackmore,*4 *Taunt.* 474. *Cotton* v. *Thurland,* 5 *T. R.*405. *Vischer* v. *Yates,* 11 *Johns. R.* 23. 7 *Price's R.* 540. *Hastelon* v. *Jackson,* 8 *Barn. & Cres.* 221. The case of the *Utica Ins. Co.* v. *Kip,* does not touch the question here, for the loan of the money sought to be recovered was deemed a perfectly legal transaction. The *security* only contravened the restraining act; and the case of *Vischer* v. *Yates* was reversed in the court for the correction of errors. 12 *Johns. R.* 1. None of the cases in the English courts referred to, come up to this one, and some of them are irreconcilable with each other. This proposition is laid down by Mr. Selwyn, vol. 1, 74, and is fully supported by authority, viz. where money is paid by one of two parties to an illegal contract, to the other, in a case where both parties may be considered as *particeps criminis,* an action cannot be maintained after the contract is executed, to recover the money back again, for *in pari delicto potior est conditio defendantis.* 8 *T. R.* 777 ; *Doug.* 467,697; *Cowp.*792. The same general position may be found in 2 *Comyn on Contracts,* 108, and also in *Saund. on Pl. & Ev.* 677. This

author says, " If the illegal contract be executed, and both parties are *in pari delicto*, no action lies to recover money paid under it." The same principle has been recognized and applied in the recent cases in the English courts, as it also has been by the chief justice in this court. 8 *Taunt*. 492. 1 *Maule & Selw*. 500, 751. 6 *Cowen*, 432. The case in *Maule & Selw*. 500, is a very strong one. The sole management of a house in London was under the control of W. B., one of the firm. He and one S. agreed to become partners in the business of making policies of insurance on marine risks, to be signed by S. in his own name. In the course of this business, which was illegal, W. B. advanced, out of the funds of his house, without the knowledge of his co-partners, some £9000, on account of payments to be made on these policies. W. B. died, and S. became a bankrupt. The question was, whether the surviving partners could prove this demand under the commission of bankruptcy, and it was referred to the judges of the K. B. for their opinion. The judges held that it was impossible to separate the guilty from the innocent partners, and that no action could be maintained to recover back the advances. Lord Ellenborough said it was unnecessary to go through the cases cited ; that it was " clearly an attempt to recover back money advanced for the furtherance, and in the very execution of an illegal contract ; and if recoverable, so might money advanced for the purpose of carrying on a smuggling transaction." 3 *Barn. & Ald*. 170.

If, then, the contract in this case shall be pronounced illegal, either as against the provisions or the policy of the statute, it seems to me quite clear, within the principle above stated, and as explained and illustrated by the cases referred to, the plaintiff cannot recover. We have before said the defendant offered substantially to prove that an amount exceeding the capital stock was subscribed, and therefore the duty devolved upon the commissioners under the fifth section of the act to distribute the stock among the subscribers, at their discretion, and in a manner most advantageous to the interest of the company. This is a very important provision. The successful operation, and, indeed, future existence of the cor-

poration, depended upon its faithful observance ; for by the 2d section, the construction of the rail road must be com-menced, and at least $100,000 expended within two years, and the whole line finished within ten, from the passage of the act, or it became null and void. How could the commis-sioners carry into effect the intent and purpose of the 5th sec-tion, without some knowledge of the character and condition of the subscribers, and how could they obtain that knowl-edge unless the subscriptions represented truly the interest of those subscribing ? If any were made for the benefit of per-sons unknown, precisely to the extent of such subscriptions, the exercise of their judgment and discretion would be de-feated in the matter. The data would be deceptive upon which they were to act. If all the subscriptions were ficti-tious, (and if one subscription may be so, so may all,) the section would become virtually a dead letter. It would de-pend upon chance whether the institution fell into the hands of its friends or enemies. It is true, the commissioners, by an examination of the persons actually subscribing, might ascer-tain the persons they represented ; but it is apparent the act contemplated no such proceeding. The only meeting of the commissioners mentioned, after the subscriptions, is the one in *July*, in the city of New-York, to make the apportionment. Nor had the commissioners authority to compel witnesses to attend, nor funds to defray expenses. Subscriptions no doubt may be made by means of an agent ; and, in ordinary trans-actions, it is usually not material, as respects the rights of the principal, that his name should be made known at the time. But this general rule must be taken subject to the provisions of the statute, and the 5th section manifestly contemplates such disclosure to enable the commissioners to execute it. If this is the true exposition of the act, then the very object of the contract was to violate a most material provision of it. The contrivance has directly that tendency and effect. The correspondence openly avows it, and exults in anticipated success. " If (says the plaintiff in his letter of June 6,) there is a heavy subscription, perhaps it might be better that we get names to apply for say, 10, 20, 30 and 40 shares, as cir-

cumstances warrant; small subscriptions by persons along the line of the road are probably the best, inasmuch as most of the politicians have used up many names of consequence to us. I am happy to hear you have made ready; when the time arrives, I will apply the powder and take good aim at the game." In *Stokes* v. *Twitcher*, 8 *Taunt*. 492, it was decided that the plaintiff could not recover back money paid to the defendant (£60) as an apprentice fee for her son, though paid without consideration; the indenture being void under the statute which required it to be stamped, and the duty to be paid. The decision was placed upon the ground that the circumstances of the case show, that there was an attempt by both parties to violate the statute, and thereby defraud the revenue; and the rule which we have supposed governs the case under consideration, was applied. The case of *Cannan* v. *Brice*, 3 *Barn. & Ald.* 179, is still stronger. It was there decided that money lent and applied by a borrower for the express purpose of settling losses on illegal stock jobbing transactions, to which the lender was not a party, could not be recovered back by him. Chief Justice Abbott denies that there is any distinction in a court of law between acts *malum prohibitum* and *malum in se;* that there every act is to be considered unlawful which the law has prohibited. The act to prevent stock jobbing, expressly prohibited both the payment and receipt of any money for compounding or making up any difference for not transferring stock, or not performing any contract in that respect stipulated to be performed. The loan of the money was not within the act; but as it was unlawful to pay, it was unlawful, within the policy of the law, to furnish the means of payment, with a full knowledge of the object to which the money was to be applied, and for the express purpose of that object. And he likened it to the case of the druggist, who sold to a brewer for the purpose of being mixed with beer, certain drugs which the latter was prohibited by an act of parliament from mixing with beer. It had been decided that the druggist could not recover for the price of the drugs sold for that unlawful purpose. The cases abundantly show the contract under consideration to be illegal, whether considered a violation of a positive provision of

the statute, or of the spirit and policy of it. Indeed, this principle is broadly stated in many of the cases already referred to for the purpose of showing the action could not be sustained if the contract was illegal, both parties being *in pari delicto.*

New trial granted.