Huncke v. Francis.

---

## JOHN HUNCKE *vs.* JOHN M. FRANCIS.

1. Money bet on the event of a horse race, and deposited in the hands of a stakeholder, may be recovered back by the depositor, if demanded before it is paid over to the winner.

2. Where a case comes before this court on a writ of error, if the court are equally divided the judgment will be affirmed.

---

In error to the Hudson Circuit Court.

The facts necessary to an understanding of the case sufficiently appear in the opinions delivered in this court.

Argued at November Term, 1857, before the CHIEF JUSTICE, and Justices ELMER, POTTS, and HAINES.

*Weart* and *I. W. Scudder*, for plaintiff in error.

*J. D. Littell*, for defendant.

The CHIEF JUSTICE. The action was brought in the court below by Francis, the defendant in error, to recover from Huncke the sum of $300, deposited in his hands, as stakeholder, by Francis, as a wager with a third party, upon the event of a horse race. The principal question involved in the various errors assigned is whether, by the laws of this state, the action can be maintained.

The statute declares the bet illegal and void. *Nix. Dig.* 315, §§ 17, 21. The rule is well settled, that where the wager is illegal, either party may recover from the stakeholder the money by him deposited, even after the wager is decided against him, provided he demanded the return of the stake before the money had been actually paid over, after the event, to the winner. *Chitty on Con.* (*ed.* 1855) 542; 2 *Parsons on Con.* 139.

This rule is sustained by numerous cases, both English and American, most of which will be found collected in notes to the authorities just cited.

By the recent decisions in the State of New York, it seems to be settled, that a party to the bet cannot recover back the deposit from the stakeholder, unless he give notice not to pay it over before the happening of the event upon which the bet depends. *Yates* v. *Foot,* 12 *J. R.* 1 ; *Fowler* v. *Van Surdam,* 1 *Denio* 560 ; *Morgan* v. *Groff,* 4 *Barb. S. C. R.* 528 ; *Like* v. *Thompson,* 9 *Barb. S. C. R.* 315.

The ground upon which these cases rest is, that the bet being decided, the contract is partially executed, and that the law will not relieve against an executed illegal contract. The English authorities, however, are clear that when the wager is illegal, the money deposited may be recovered by the depositor, after the bet is decided, if demand is made before it is paid over to the winner. It was so held by Ch. Just. Kent, in a very elaborate opinion, in which the court concurred, in *Vischer* v. *Yates,* 11 *Johns. R.* 23. The same view was adopted by the Supreme Court of this state in *Moore* v. *Trippe, Spen-*

*cer* 263, and will be found to be supported by many of the American cases.

Aside from this diversity of opinion upon the simple point whether the money can be recovered after the wager has been decided, there is no conflict whatever of authority upon the right of the party to an illegal wager to recover the amount deposited from the stakeholder. The authorities are numerous and uniform. The rule of the common law is perfectly well settled. It is not understood that the common law rule is at all drawn in question. It is insisted, however, that the rule is inapplicable to the present case, inasmuch as, by the statute of this state, the stakeholder of money wagered upon the running, pacing, or trotting of horses is declared guilty of a misdemeanor. The mere act of stakeholding is made unlawful. The deposit of the money in the hands of the stakeholder being criminal, and the parties being *in pari delicto*, the stakeholder cannot, it is said, recover back his money. The conclusion rests upon a misapplication of the legal principle by which the question is controlled.

In the first place, the parties are not, so far as the question of criminality is concerned, *in pari delicto*. The statute makes the stakeholder alone indictable. The party making the deposit is guilty of no misdemeanor by the mere act of depositing the stakes. The fact of making the bet is illegal, but making the deposit in the hands of the stakeholder involves, on the part of the depositor, no additional criminality. So far, therefore, as the criminality of the act is concerned, the depositor stands precisely in the situation in which he stood before the passing of the statute making the stakeholder indictable.

It is true that the fact of stakeholding being declared by the statute a misdemeanor, depositing the money in the hands of the stakeholder, though not criminal, is a violation of the spirit and policy of the law—and so it was before the statute declared the stakeholder guilty of a misdemeanor. The bet was illegal—the holding of the

stakes was ancillary to this illegal act, and was in clear contravention of the spirit and the policy of the law which declared the bet illegal.

But, that the argument may be presented in its greatest force, let it be conceded that the payment of the money to the stakeholder is in direct violation of law. The simple question, then, presented is, whether money paid not only upon an illegal contract, but in violation of law, can be recovered back while that contract remains unexecuted. Clearly the contract cannot be enforced. The court will never lend its aid to enforce the execution of a contract illegal in itself or against the policy of the law. Nor, on the other hand, if the illegal contract be executed, will the court lend its aid to restore the money paid upon such illegal contract. Here the maxim applies, *in pari delicto potior est conditio possidentis.* But the contract being unexecuted, the illegal purpose for which the money was paid not having been effected, may the money be recovered back in disaffirmance of the contract? It was urged, upon the argument, as a legal principle, that money paid in violation of law cannot be recovered back. The legal principle is directly the reverse. Money paid upon an unlawful contract, while that contract continues executory, may be recovered back. The principle cannot be stated more clearly than in the language of Mr. Comyn : " When money has been paid upon an illegal contract, it is a general rule that, if the contract be executed, and both parties are *in pari delicto,* neither of them can recover from the other the money so paid ; but, if the contract continues executory, and the party paying the money be desirous of rescinding it, he may do so, and recover back his deposit by action of *indebitatus assumpsit* for money had and received. And this distinction is taken in the books, namely, where the action is in affirmance of an illegal contract, the object of which is to enforce the performance of an engagement prohibited by law, clearly such an action can in no case be maintained · but when

the action proceeds in disaffirmance of such a contract, and instead of endeavoring to enforce it, presumes it to be void, and seeks to prevent the defendant from retaining the benefit which he derived from an unlawful act, then it is consonant to the spirit and policy of the law that the plaintiff should recover. 2 *Comyn on Con.* 109.

In *Jaques* v. *Golightly*, 2 *Black. R.* 1073, the action was brought to recover back premiums paid by the plaintiff to the defendant for insuring lottery tickets in violation of law. A verdict was rendered for the plaintiff. On a motion for a new trial, the defendant's counsel insisted that the contract was void and illegal, by the statute 14 *Geo.* 3, *ch.* 76, and the plaintiff entitled to no relief, because *particeps criminis* and knowingly transgressing a public law. But the court unanimously held that the verdict was right. Mr. Justice Blackstone says these lottery acts differ from the stock-jobbing act of the 7 *Geo.* 2, *ch.* 8, because there both parties are made *criminal* and subject to penalties. But here (on the part of the injured) the contract on which he was paid his money is not criminal, but merely void: and therefore, having advanced his premium without any consideration, he is entitled to recover it back. This case was held to be good law in *Jaques* v. *Withy and Reid*, 1 *Hen. B.* 65.

In *Lowry* v. *Bourdieu, Doug.* 468, the action was brought to recover a premium of insurance paid on a gaming policy, prohibited by the statute 19 *Geo.* 2, *ch.* 37. It was objected that both parties being equally guilty of a breach of the law, the plaintiff could not recover. A verdict was taken, under the direction of Lord Mansfield, for the defendant; but the next morning he expressed a doubt of the propriety of his opinion, and a rule to show cause was granted. The point insisted upon was, that the contract was executory. Mr. Joseph Buller, who concurred in sustaining the verdict, says, "There is a sound distinction between contracts executed and executory; and if an action is brought with a view to rescind a contract, you

must do it while the contract continues executory, and then it can only be done on the terms of restoring the other party to his original situation. If the plaintiffs had brought their action before the risk was over and the voyage finished, they might have had a ground for their demand; but they waited till the risk had been completely run." In other words, till the contract was completely executed, and the money in the hands of the defendant, in accordance with its terms. See Mansfield's note.

In *Munt* v. *Stokes*, 4 *Durn. & E.* 561, the action was brought by executors to recover back money paid by their testator upon a *respondentia* contract prohibited by law. "In the case of illegal contracts," says Mr. Justice Buller, "one party cannot recover against the other on the contract itself; but if he come to rescind the contract he may recover back so much as has been paid. If the party come into a court of justice to enforce an illegal contract, two answers may be given to his demand, the one, that he must draw justice from a pure fountain, and the other, that *polior est conditio possidentis*. Such would have been this case if the plaintiffs had not paid the money, and an action had been brought on the contract. But the plaintiffs having paid the money, the question is, whether the defendants retain it against conscience. The same principle will be found recognized and adopted in *Tappenden* v. *Randall*, 2 *Bos. & Pul.* 471; *Aubert* v. *Walsh*, 3 *Taunt.* 281; *Cotton* v. *Thurland*, 5 *T. R.* 405.

In *Perkins* v. *Savage*, 15 *Wend.* 412, the principle of the English authorities was distinctly recognized. In that case the object of the contract entered into between the parties was to violate the provisions of a public statute. The money had been paid in furtherance of the contract, and the contract in part executed, leaving a balance unexpended in the hands of the defendant, for which the action was brought. It was held that the action would not lie. Mr. Justice Nelson, in delivering the opinion of the court, says, "The money sought to be recovered was ad-

vanced to the defendant in pursuance of the contract; and it is by virtue of its terms, either express or implied by law that the action must be sustained, if it can be at all. This is not an attempt by the plaintiff to avail himself of a *locus penitentiæ* to retrace his steps, and disaffirm an unlawful agreement while it is yet executory. The illegal purpose or act has been executed, and the effect of a recovery is to enable him to realize a part of the fruits of it by enforcing a performance by the defendant." It was held that the action could not be maintained, because thereby the provisions of the contract would necessarily be recognized and its provisions enforced. See, also, *The Utica Ins. Co.* v. *Kip*, 8 *Cowen* 24.

In *Lacaussade* v. *White*, 7 *T. R.* 535, the doctrine was carried still further, and it was held that where the contract had been fully executed, and the money paid to the winner upon an illegal wager, it might be recovered back in an action of *indebitatus assumpsit.* The court held that it was more consonant to the principles of sound policy and justice, that wherever money has been paid upon an illegal consideration, it may be recovered back again by the party who has thus improperly paid it, than by denying the remedy to give effect to the illegal contract. This case has been repeatedly overruled, and is certainly not in accordance with the current of authority, inasmuch as the illegal contract was executed.

The result of the cases is clearly stated by Mr. Selwyn, thus: when money is paid by one of two parties to an illegal contract to the other, in a case where both parties may be considered as *particeps criminis*, an action cannot be maintained, after the contract is executed, to recover the money. 1 *Selwyn's Nisi Prius* 92 (*ed* 1837.)

The English rule, says Mr. Justice Kent, is the true rule on this subject. On the disaffirmance of the illegal and void contract, and before it has been carried into effect, and while the money remains in the hands of the stakeholder, each party ought to be allowed to withdraw

his own deposit. The court will then be dealing equitably with the case. It will be answering the policy of the law, and putting a stop to the contract before it is perfected. *Vischer* v. *Yates,* 11 *Johns. R.* 31.

The American cases fully sustain this doctrine.

Is, then, the contract in this case executed? The statute making the stakeholder indictable has not affected the terms or conditions of the contract between the parties to the wager. That contract clearly is not executed. But there is another contract between the parties to the bet and the stakeholder, and that contract which the statute has declared illegal, it is said, is executed by the payment of the money to the stakeholder. If the contract be that the stakeholder should receive the money, and keep it himself, the contract is doubtless executed. But the contract with the stakeholder is, that he shall hold the stakes till the bet is decided, and that he shall then pay them over to the winning party. The stakeholder is indictable for receiving the stakes. His offence is complete by the terms of the statute, but the contract between him and the parties to the bet is not thereby executed. The receipt of the money is in fact the consideration of the contract by the stakeholder to pay the money over to the winning party; but until the money is so paid, the contract is not executed.

The defendant received this money upon an illegal and void contract. He has no title to it in law or in equity. The illegal purpose for which it was received has not been effected. The plaintiff is here in disaffirmance of the illegal contract, seeking to prevent the defendant from retaining the benefit which he derived from an unlawful act; and the spirit and policy of the law require that he should recover.

It seems a remarkable mode of enforcing a public law, to declare that when a party has taken the first step toward its violation, no *locus penitentiæ* shall be allowed him; that having deposited his money for an unlawful

purpose, he shall not be permitted to retrace his steps before that purpose has been accomplished.

There was, in my judgment, no error in the ruling of the court below, and the judgment should be affirmed.

HAINES, J. That an executory contract may be rescinded is not denied. The contract in this case was, that the defendant would hold the stakes, and pay them to the winner of the race. Until the money was paid over, the contract was not executed, but remained executory and subject to rescission. While it so remained, the plaintiff below forbid the payment and demanded the money of the defendant. On his refusal to pay it, a cause of action accrued to the plaintiff, and, in my opinion, he has a right to recover.

No error having been shown to the majority of the court, the judgment stands affirmed.

ELMER, J., (dissenting.) It is a well-established and important principle of the common law, that no court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act, a principle adopted not for the benefit of the defendent, for in many cases he has the benefit of it, contrary to what seems the real justice of the case, as between him and the plaintiff, but founded on general principles of policy and for the better vindication of the laws. The same principle is otherwise expressed by the maxim, where two parties are equally criminal, the condition of the defendant is best. *Holman* v. *Johnson, Cowp.* 341 ; *Vandoren* v. *Staats, Penn.* 887 ; 2 *Par. Con.* 252, *note s.*

In the case of *Cotton* v. *Thurland*, 5 *Term R.* 405, it was held that this principle does not apply to the case of money deposited with a stakeholder to abide the determination of an illegal wager ; and it may now be considered as the established doctrine, that such money may be recovered back by the depositor at any time, either before or after the determination of the wager, if it remains in his hands.

*Smith* v. *Bickmore,* 4 *Taunt.* 474; *Hastelow* v. *Jackson,* 8 *B. & C.* 221; *Martin* v. *Hewson,* 29 *E. L. & E. R.* 424; *McAllister* v. *Hoffman,* 16 *S. & R.* 147; *Conklin* v. *Conway,* 18 *Penn. St. R.* 329; *Kelly* v. *Bartley,* 1 *Sandf.* 15; *Ruckman* v. *Pitcher,* 1 *Coms.* 392; *Bates* v. *Lancaster,* 10 *Humph.* 134; *Humphreys* v. *Magee,* 13 *Missouri* 435; *Bledsoe* v. *Thompson,* 6 *Rich. S. C.* 44.

These were all cases arising upon illegal bets where the stakeholder was not implicated in the guilt of the transaction, and rest upon the reason stated by Kent, in *Vischer* v. *Yates,* 11 *Johns.* 31, that the stakeholder is not equally criminal. When the case of *Moore* v. *Trippe,* *Spenc.* 263, was decided by this court, in 1844, the act of 1811 was partly in force, which imposed no penalty on the stakeholder, and gave an action to the loser to recover from the winner any money he had paid over to him, a circumstance much relied on by the judge who delivered the opinion.

The existing statute of this state, to prevent horseracing, (*Nix. Dig.* 315,) contains no clause authorizing money lost to be recovered back, but makes all parties, including those who bet and stakeholders, liable to indictment. Both parties in this case were, therefore, equally criminal, and the maxim that the law will afford no aid to either of them, fully applies. The obvious policy of the act, which is more stringent than the previous acts, in my opinion is, by making all parties equally criminal, to throw them all out of the protection of the law. To maintain his case, the plaintiff was obliged to show himself and the stakeholder guilty of the illegal act; for, had he shown only the payment of the money, the law would have implied that it was paid for a good consideration. One of the penalties of the crime is, that the money staked can never be reclaimed.

Whether this policy, or that of allowing a person making a bet to repent before the bet is decided, or to dispute the fairness of the race, and recover back his money from

the stakeholder or the winner, is or is not the one most likely to effect the object of preventing horse races, and betting thereon; it belongs to the legislature to decide, and not to the courts. We must presume that the law-making power had in view the well-known principles of the common law, and framed the statute so as to leave the guilty parties to their full operation.

The cases I have referred to hold that money bet on an illegal wager may be recovered back of the stakeholder; but all the authorities deny the action after the illegal contract has been executed by the payment of the money to the winner before the depositor has rescinded the contract, unless the statute expressly allows an action against the winner. In cases where, as between the party to a bet and the stakeholder, there was no illegality, it is only after the execution of the contract that the parties become equally criminal; and so long as the mere deposit of the money involves no criminality, but the illegality meant to be prevented is only the determination of the wager, it is in consonance with the policy of the prohibition to permit a party to repent, and thus prevent the illegal thing from being done. The result of the authorities is stated, in 2 *Par. Con.* 252, to be, " that he who advances money in consideration of a promise or undertaking to do a thing prohibited by law, or morality, or public policy, may, at any time before it is done, rescind the contract, and prevent the thing from being done, and recover back the money; but it would seem obvious, if he delays rescinding until his decision is inoperative, and the thing will still be done, although the contract at the time of the rescission was in form executory, it should come under the same rule as an executed contract for unlawful purposes." Many of the cases have gone very far in search of reasons for sustaining actions against persons receiving money which they had no equitable claim to retain, and have thus unnecessarily weakened the salutary rule of the common law; but I am not aware that a contract has been

held to be executory, and liable to be rescinded, where the stakeholder was expressly forbidden to hold the money, and made punishable for doing so. The contract to hold the money, from which in other cases the law implies a contract to return it if demanded, is in such a case itself illegal, and comes within the plain intent of the rule, which treats the contract, after it has been consummated by the payment of the money to the winner, as executed, for the very purpose of punishing it, by holding it to be beyond the pale of the law. The thing prohibited has been done, although all the contemplated evil may not have ensued. In the case of a bet upon a horse race, the statute punishes the mere making of it, and the holding of the money, precisely as if the race had been run. It strikes at the very beginning of the evil. No one can examine the numerous reported cases without perceiving that the repentance, which induces parties to rescind a contract to pay a bet, or where the statute has authorized an action against the winner, which produces a suit, has commonly grown out of a dispute about the fairness of the proceedings. The bills of exception in this case show this motive, and that one of the horses was actually trotted over the ground. Such disputes certainly deserve no favor, and are best decided by denying to the parties all aid from the courts. In my opinion, the judgment should be reversed.

POTTS, J., (dissenting.) This was an action of debt brought by Francis against Huncke, to recover three hundred dollars, deposited with him as stakeholder, upon a horse racing bet made between Francis and one Boyd. Upon the trial the plaintiff proved the making of the bet, and the receipt by Huncke of the three hundred dollars from Francis, in pursuance of the bet, as stakeholder. He also proved that some three hours after Boyd started his horse on the race, Francis not having appeared with his horse on the ground, a notice signed by Francis, was served on Huncke not to pay over the money to Boyd.

The plaintiff resting there, the counsel of the defendant moved for a non-suit, on the ground that the statute of this state prohibits betting upon the racing or trotting of horses, and the staking of money or the making up of a purse, and makes the person betting, or making up the purse, and the stakeholder both liable to fine and imprisonment; that both plaintiff and defendant were *in pari delicto*, and that courts will not aid either party in such case. The motion was refused, and the defendant, having offered to introduce evidence explaining more fully the facts of the transaction, the court overruled the same, and charged the jury that the plaintiff was entitled to recover. To this ruling and charge there are bills of exception, and the question is whether, in New Jersey, a party depositing money with a stakeholder upon a horse racing wager can recover it back after the race has taken place.

The present act on the subject of horse racing, passed March 19th, 1846, (*Nix. Dig.* 315,) differs in several important particulars from the previous acts. One is, that it has repealed that section of the former act which provided that money, &c., lost on racing, &c., might be recovered back, under which provision the case of *Moore* v. *Trippe, Spencer* 262, was decided; and another is, that the stakeholder, as well as the parties betting, shall be deemed guilty of a misdemeanor, and punished by fine or imprisonment, or both. So that now the parties are all equally guilty in the eye of the law; and the maxim, *in pari delicto, melior est conditio possidentis* applies in the case where the action is brought against the stakeholder, as well as where it is brought by the loser of the bet against the winner.

The case of *Den* v. *Shotwell*, 3 *Zab.* 465, and 4 *Zab.* 789, is not in conflict with the application of this well-settled doctrine to the present case. There Wooden brought ejectment to recover a lot of land which he had previously disposed of by lottery; and the action was sustained on the ground that the plaintiff stood on his original title,

and the defendant could not set up the illegal title he had obtained to defeat it, even though that title came from the plaintiff himself. And all that was affirmed in *Evans* v. *Trenton*, 4 *Zab.* 772, was, that " where the agent or stakeholder is clearly and beyond all question not *in pari delicto,* no well-considered case has ever held that the money could not be recovered out of his hands."

Here the whole case made by the plaintiff was, that he had deposited the money with Huncke, as stakeholder, to await the result of a trotting match agreed upon between him and Boyd.. He literally brought the case within the statute, and proved himself out of court. The judgment should be reversed.

CITED *in Sutphin* v. *Crozer*, 3 *Vr.* 463.