Scott, C. J.
There is no room to doubt that the contract out of which the original action in this case arose, was wholly illegal and void. By its terriis it clearly appears that one of the parties agreed to sell, and the other to purchase, a tract of land, for the express purpose of having it subdivided into lots, which should constitute prizes in a lottery, or scheme of chance, or “ gift enterprise ” as the parties saw fit call to it, and $1,000 of the price was to be paid in tickets in this scheme of chance.' Under the statutes of this state, the performance of this contract would have rendered at least one of the parties liable to a fine of $500 and six months’ imprisonment. 1 S. & C. 433; S. & S. 287. The contract was entire and indivisible. It was for the sale of lands to be used as prizes in a lottery scheme, and part of the consideration to be paid necessarily involved a violation of a penal statute.
For each of these reasons the whole contract was clearly illegal, and would not have been enforced, in whole or in part, at the suit of either party, in any of the courts of the state. Yet on the trial of the case, at special term, the jury was instructed that the contract was not illegal upon its face, and could only be regarded as illegal by the jury if they found from the evidence that it was the understanding of both parties that the money part of the price to be paid for the land was to be raised by sale of tickets in the contemplated lottery. And they were thereupon instructed as follows:
“ If you find the contract between these parties was legal, neither party would have the power to rescind it at pleasure ; but if by mutual agreement they did rescind it, and the defendants were permitted to retain for so doing the *257 $500 already paid, I charge you it was a good and valid consideration.
“ If you find that it was a valid contract, and that defendants, without consent of the plaintiffs, sold the land to other parties, and refused to comply with the agreement, or if, after giving the extension of time, they broke that promise, and without consent of the plaintiffs sold the land, so as to deprive themselves of the ability to perform the contract, then, if you find the plaintiffs offered and were ready to perform their contract, they are entitled to recover back the money, with interest.”
This instruction was clearly erroneous. The jury should not have been instructed to inquire and determine as to the illegality of the contract, which was apparent on its face, and the hypothetical case proposed by the court as to the possible findings of the jury was wholly outside of the case on trial. The plaintiffs below had not alleged in their petition, nor had they offered any testimony tending to prove that they had been ready and willing, or had ever offered to comply with the contract on their part by paying,at the time prescribed by the contract, or at any other time, the purchase money for the land. On the contrary, it clearly appears from the opening paragraph of the general charge of the court, that the plaintiffs below were claiming that the contract was wholly illegal, and their petition shows that their action was brought not for the enforcement of their contract, but in assertion of their rights in alleged rescission and abandonment of it by the parties.
This part of the charge was, therefore, calculated to mislead the jury, and to produce a wrong verdict; and if it had this effect, which seems at least to be highly probable, the verdict should have been set aside and a new trial granted for error in the charge of the court, though not excepted to when given. Kline & Berry v. Wynne, 10 Ohio St. 223; 19 Ohio St. 375.
But, without considering in detail this and other alleged errors in the charge of the court, and in its rulings upon *258 questions of law arising upon the pleadings and the evidence offered upon the trial, of which many are claimed by plaintiffs in error to have been erroneous; was the case as presented by the pleadings and uncontradicted evidence one in which the plaintiffs might legally recover, or was the verdict of the jury against the law of the case ? If the latter was the fact, the verdict of the jury should have been set aside, and a new trial awarded, or the plaintiff’s petition been dismissed.
The plaintiffs below had in their petition based their right to a recovery on two distinct grounds, both proceeding on the theory of an abandonment or rescission of the contract.
In the first place, they base their claim to recover the money paid by them on the contract,on their consent to rescind it, in consideration of which they allege that the plaintiffs in error promised and agreed to repay them the money which they had paid in part performance of the contract. They seek to recover upon this agreement and promise, which the defendants below deny, both in their answer and by their testimony on the trial. But this promise, even if proved, would be wholly void for want of a consideration. The consent of the plaintiffs below to rescind a contract which was wholly illegal, and, therefore, bound neither party, was no consideration for the promise of repayment. The promise to repay, if made, was a mere nudum pactum, and, therefore, no action could be maintained upon it.
Secondly, plaintiffs below in their petition base their right of recovery on the ground that the defendants below had disabled themselves to perform the contract, by conveying the lands sold to them to other parties, in consequence of which they were justified in regarding the contract as rescinded, if they chose to do so, and in demanding that they should be placed in statu quo, by a return of the money paid. This alleged state of facts would, without doubt, if proved, have entitled the plaintiffs below to recover, provided the contract had been a legal one, and as *259 such binding upon the parties. But it was wholly illegal, and bound neither of them. The non-performance of it by either of the parties gave no right of action to the other. Tet, as to this ground of the action, as well as the first, the petition proceeds on the idea of the legality of the contract. The claim is, in the first place, that the contract was rescinded by agreement of the parties, the defendants below promising, in consideration thereof, to refund the money which had been paid thereon ; and, secondly, that the defendants below had authorized the plaintiffs to treat the contract as rescinded, by disabling themselves to perform it.
The petition of the plaintiffs below proceeds throughout upon the mistaken idea that the original contract of the parties was legal and valid. As the fact was clearly otherwise, they had no right to recover. Had their petition even been amended so as to place their right of recovery on the only tenable ground, to wit, that the contract was illegal, and that they, repenting thereof in due season, had refused to perform it, and thereupon demanded the return of the money paid thereon, would they, under the state of facts shown by the evidence, have been entitled to recover ?
To entitle them to such recovery, they must have repented whilst the contract remained executory. The doctrine of the common law on this subject is thus stated in Parsons on Contracts, vol. 2, page 747:
“We have already spoken of illegal contracts in connection with other subjects, and especially of an illegal consideration in our first volume, and in a preceding section of this chapter. We would add here that as all contracts which provide that anything shall be done which is dis. tiuctly prohibited by law, or morality, or public policy, are void ; so he who advances money in consideration of a promise or undertaking to do such a thing, may, at anytime before it is done, rescind the contract, and prevent the thing from being done, and recover back his money. But it would seem obvious that if he delay rescinding until his *260 rescission is inoperative, and the thing will still be done, although the contract, at the time of the rescission, was in form executory, it should come under the same rule as an executed contract for unlawful purposes ; and here the law, in. general, refuses to interfere, but leaves both parties as they were; unless the case shows that there is a substantial difference between them, the one doing and the other suffering the wrong. And in this case, the sufferer may have a remedy, but not the wrong-doer.”
In the case before us, the evidence shows clearly that the defendants below were very desirous to sell the land described in the contract for the purpose of completing their payments of the purchase-money soon to become due from them for the same premises. The plaintiffs below desired to purchase the land, and speculate thereon by means of a lottery. Defendants below agreed to sell the land to them for this purpose, on condition that $500, less than one-fiftieth part of the whole price, should be paid in hand, and the residue in less than two months. The $500 was paid, and the defendants below complied with the contract on their part, so far, at least, as to withdraw the land from the market for several months, and to permit it, during that time, to be controlled by the plaintiffs below for the purposes of a lottery. The $500 were paid, not in consideration of an illegal act to be performed by the defendants below, but to obtain from them the means by which the plaintiffs might themselves accomplish an illegal purpose. In the accomplishment of this purpose, they were to be the actors; they were to get up the lottery, and, if it succeeded, were to reap the profits. Eor several months they faithfully and diligently endeavored to carry out the enterprize. They arranged and published their lottery scheme, put 30,000 tickets on the market, sold quite a number of them for a dollar apiece, and had appointed the 30th of December for the time of the drawing; but the limited sale of tickets not justifying the drawing at that time, it was postponed. In the meantime, the defendants below had been aiding the plaintiffs by certifying to the honorable char *261 acter of the enterprize, and endeavoring to enlist in its interest the countenance and patronage of certain charitable organizations. But the undertaking proved a failure financially, and before the sales of tickets would justify a drawing, the plaintiffs were informed that their lottery had been brought to the notice of the grand jury of Hamilton county, and that they were in danger of being indicted. Under these circumstances of difficulty and danger, the further prosecution of the project was abandoned, and plaintiff's being wholly unable to pay for the land, it was, without objection on their part, sold to other parties by defendants below for less than one-half of the price which plaintiffs had agreed to pay for it, and $2,000 less than it had cost the defendants. Plaintiff's below, on abandoning the lottery project under fear of a criminal prosecution, refunded the money received from the sale of tickets, except about $25, to which extent they were unable to find the holders of the tickets, and this sum the superior court in general term required them to remit from their judgment, which was thereupon affirmed.
The maxim, “Hx turpi causa, non oritur actio ” is an old and familiar one, resting on the clearest principles of public policy, and never to be ignored. In accordance with this maxim, nothing is better settled than that, in regard to contracts which are entered into for fraudulent or illegal purposes, the law will aid neither party to enforce them whilst they remain executory, either in whole or in part, nor, when executed, will it aid either party to place himself in statu quo by a rescission, but will, in both cases, leave the parties whore it finds them.
It is true that particular statutes have been, from time to time, enacted in this state as well as in many of our sister states, which are, to some extent, in contravention of this common-law doctrine. The statutes of this state, which allow money won by gaming or betting to be recovered back by the loser, furnish an example of this kind. But such statutes are a recognition of the established rule that no recovery could be had in such cases at common law; *262 they are exceptional in their character; are in derogation of the common law; and therefore are to be construed strictly, and not extended by implication beyond the particular cases of illegality for which they provide.
So long as the illegal acts contemplated by such contracts remain wholly unexecuted, the party who has paid money to obtain their performance may repent of the wrongful purpose, abandon his contract, and recover back the money so paid. The law will aid him in such a case, in furtherance of a policy which aims to prevent wrongdoing by encouraging such repentance and abandonment.
But where such a contract has been partially executed by both parties, as where one has paid money on the contract, and the other has rendered services, or delivered property, or otherwise suffered loss or damage by part performance, on his part; then we understand the law to be, that as to such part performance, the condition of the parties is the same as if the contract had been fully executed ; the law will aid neither party in its farther execution, nor in undoing what has been done under it. Neither of the parties has a right to be placed in statu quo, at the expense of the other. Many eases might be cited in support of this doctrine. Thus in Nellis v. Clark, 20 Wend. 24, it was said by the court: “Where a contract is entered into for fraudulent or illegal purposes, the law refuses to enable either party to disturb such parts of it as have been executed or carried into effect, and as to such parts as remain executory it will not compel the contractor to perform his engagement, or pay damages for non-performance; thus, in both cases, leaving the parties where it finds them.’' This language was cited with approbation in Goudy v. Gebhart, 1 Ohio St. 266.
In Perkins v. Savage, 15 Wend. 412, it was held that “ where a c,ontract is entered into between two parties, the object of which is to violate the provisions, or the spirit and policy of a public statute, and one pays money to the other in furtherance of such contract, and the contract is in part executed, by the accomplishment in part of the *263 original design, leaving, however, a portion of the money unexpended, an action will not lie to recover back the unexpended balance.”
Miller v. Larson, 19 Wis. 466, was an action brought to recover the possession of lands which had been delivered by the plaintiff to the defendant in pursuance of a champertous contract between the parties. The court said : “ This contract has been executed, at least partially, by both parties. It is only where the contract is executory that a rescission and recovery are allowed. If it has been partially executed, and money or labor expended on one side, and land or property delivered on the other, in part performance of it, as to such part performance the condition of the parties is the same as if it had been fully performed. The law will not aid either party to undo what •was so unlawfully done.”
Skinner v. Henderson, 10 Missouri, 207, was an action to recover back money paid on an illegal contract. The court said in that case : “ The rule in respect to money paid on an illegal contract appears in general to be, that money advanced may be recovered back whilst the contract remains executory, because a violation of law is thereby prevented. When both parties are in pari delicto, melior est conditio defendentis, not because he is favored in law, but because the plaintiff must draw his justice from pure sources.”
These decisions, we think, rest upon sound principles. Suppose A. should contract with a builder for the erection of a building to be used for unlawful purposes. If the builder, in furtherance of the unlawful purpose, performs the contract on his part, it is clear that the law will' not aid him in recovering from A. the price agreed to be paid.
But suppose the price had been paid in advance, and the builder had procured the necessary materials, and had partly constructed the building ; could A. then, by rescinding or abandoning the contract, acquire a right to recover back the money paid ? Most clearly not. He was, at least, in pari delicto, and cou Id have no equitable right to throw *264 all the loss arising from the abandonment of the illegal purpose upon the other party. His repentance, to be meritorious, should come in time to prevent loss to the other party, and, if honest, should be at his own proper expense.
Let us then apply the rule we have stated to the case before us. The plaintiffs below, as'we have seen, had paid but a small fractional part of the purchase money for the land bought; and they had agreed that the money so paid should be forfeited if they failed to make the' further payments as agreed upon. In consideration of the premises, and in pursuance of the contract, the defendants below withdrew their land from the market and subjected it to the control of plaintiffs as prizes in a lottery scheme. The undertaking was vigorously prosecuted for months; 100,000 lottery tickets were issued, some 80,000 of which were put upon the market, and quite a number sold. Defendants below were, during this time, zealously aiding in the enter-prize, and assisting to deceive the public by a scheme which, under the guise of ehai’ity, aimed at nothing higher than illegal private speculation. The project proved to be unremunerative. A sufficient number of tickets were not sold to raise the purchase money; and kind friends informed the plaintiffs that they were in imminent danger of a criminal prosecution. The full execution of the contract became impossible, and it was, therefore, reluctantly, but of necessity, abandoned. Which of the parties suffered most by its partial execution and subsequent abandonment we do not know, nor is it necessary to inquire. It is enough to know that it was partially executed by both parties; the evil purpose contemplated in the contract had been partly carried into effect;, and each had contributed to this end by furnishing money, services, or land. The plaintiffs, when they brought suit, had part of the money arising from the^sale of tickets in their pockets, and th¿ hands of neither party were clean. .In this condition of things, it was not the duty of the court to aid either party, in the enforcement or rescission of the contract. ' To either of them, as plaintiffs, *265 the maxim, “ Melior est conditio defendentis,” was applicable.
The necessity, which the court in general term found itself under, of purifying the defendants in error by requiring them to remit from their judgment a sum equal to the amount out of which the purchasers of tickets had been swindled, goes far to demonstrate that upon sound principle a recovery in the action should not have been permitted. Upon what principle these fruits of iniquity should be transferred from one party to the other, where both were in pari delicto, is not very apparent. But it 'is clear that the same principle would have prevented any recovery whatever, if the plaintiffs below had succeeded in realizing from their illegal enterprise the full amount of the payment made on their contract. And if a recovery is to be permitted only by way of indemnity against loss, then the question arises, why should one of two parties, who are each particeps criminis, be indemnified against loss, whilst no inquiry is permitted as to the damage resulting to the other from the failure of the criminal enterprise ?
Had the jury been properly instructed as to the character of the contract, and in accordance with the foregoing'views of the law, they would no doubt have rendered a very different verdict.

Judgment reversed, and cause remanded.