## Case No. 7,903.

### KNOWLTON v. CONGRESS & EMPIRE SPRING CO.

[14 Blatchf. 364; 17 Alb. Law J. 10; 5 N. Y. Wkly. Dig. 418; 5 Reporter. 166; 24 Int. Rev. Rec. 11.][1]

Circuit Court, N. D. New York. Dec. 24, 1877.[2]

CORPORATION — STOCK — ILLEGAL INCREASE OF STOCK — PART PAYMENT — FORFEITED STOCK— SUIT TO RECOVER AMOUNT FOR STOCK — LOCUS POENITENTIAE.

1. Where an illegal contract or transaction is only partially performed. there is a locus poenitentiae, and either party may rescind the contract.

2. K. subscribed for shares in the capital stock of a corporation, in increase of its stock. The proceeding was illegal. because in contravention of the statute under which the corporation was organized. K. paid $13,980 as an instalment on his subscription, on the first call. By the subscription, he was to forfeit all he had paid, if he failed to pay subsequent calls. He so failed, and, after the corporation had declared his rights to be forfeited, but before any scrip had been issued for the new stock, the corporation abandoned the plan of increasing the stock. K. sued the corporation to recover back the $13,980: Held, that he was entitled to recover it.

[Cited in Dement v. Rokker, 126 Ill. 186, 19 N. E. 33.]

[This was an action first brought in 1869 by Dexter A. Knowlton in the supreme court of the state for Kings county, N. Y., against the Congress & Empire Spring Company, to recover the sum of $13,980, with interest; this being the amount paid on subscriptions to shares of reissued stock, which the plaintiff claimed should be paid back to him. A petition for removal was filed in April, 1875. A motion to remand the case was made in the circuit court for the Eastern district of New York, and the case was remanded to the state supreme court. Case No. 7,902. There was a verdict in the supreme court for the plaintiff, but this was reversed by the court of appeals of New York, and a new trial ordered. 57 N. Y. 518. Upon the new trial a motion was made to remove the case to this court. This was done, and the case is now

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge. and here reprinted by permission. 5 N. Y. Wkly. Dig. 418, and 5 Reporter, 166, contain only partial reports.]

[2] [Affirmed in 103 U. S. 49.]

heard by the court, a jury having been waived.]

Peter Starr and Henry M. Ruggles, for plaintiff.

Charles S. Lester, for defendant.

WALLACE, District Judge. This case comes here by removal from the state court, after a decision adverse to the plaintiff by the commission of appeals, reversing the judgment of the supreme court in favor of the plaintiff, and ordering a new trial. 57 N. Y. 518.

The plaintiff seeks to recover $13,980, paid by him to the defendant upon a subscription for shares of its capital stock. The defendant, by the action of its directors and stockholders, instituted proceedings for an increase of its capital, and the subscription agreement was prepared and executed in furtherance of that object. It has been assumed, in the arguments of counsel, that these proceedings were illegal, as in contravention of the statute under which the defendant was organized, and constructively fraudulent as to the public and all stockholders not assenting thereto, and the decision of the case in the state courts has been adjudicated upon that assumption. The plaintiff was a stockholder and trustee of the defendant, and participated actively in these proceedings.

The subscription agreement provided, that the subscribers should pay the defendant for the new shares in instalments, as called for by the directors, and, upon failure to pay any call for sixty days, should forfeit all sums theretofore paid upon the subscription. The plaintiff paid the sum in controversy upon the first call under the subscription, but failed to respond to subsequent calls for more than sixty days. After a resolution had been passed by the directors forfeiting the plaintiff's rights for delinquency, but before any scrip was issued for the new stock, and while the proceedings were inchoate, the stockholders resolved to abandon the project to increase the stock. and, pursuant to this action, the directors adjusted with parties who held receipts for payments under the subscription, by giving them the bonds of the defendant issued for that purpose. No bonds were tendered to the plaintiff. He demanded repayment of the money paid upon the subscription, and, being refused, brought this action.

If the subscription agreement was valid, the plaintiff can have no redress, but must be held to his stipulation to forfeit the payment for his delinquency in responding to subsequent calls. The defendant had become entitled to the plaintiff's money by the terms of the subscription agreement. at the time it concluded to abandon the scheme for increasing its capital, and, however hard and inequitable it may seem that the defendant should retain this money. while abandoning the project for which it was received, its legal right so to do is clear. On the other hand, if

the subscription was executed as part of an illegal scheme, it is void in all of its conditions, and the defendant can take nothing under color of the forfeiture stipulated for. The sole question, in my view, therefore, is, whether the plaintiff will be permitted to recover money paid in partial performance of an illegal transaction The defendant has no right to the money, unless that of possession, under circumstances which deny to the plaintiff the assistance of the court in reclaiming it.

Certain propositions applicable to the present case are not debatable. Courts of justice refuse to entertain any application to enforce a contract or transaction which is immoral, or subversive of public policy, or in contravention of a statute. When the transaction has been consummated, or the contract has been executed, if the parties to it are in pari delicto, neither will be permitted to recover money or property delivered to the other in furtherance of it. When the law which the transaction contravenes is designed for the coercion of one party, or the protection of the other, or where one party is the principal offender and the other acquiesces by constraint of circumstances, the parties are not in pari delicto, and the lesser offender will be relieved, although the illegal transaction has been consummated. So far, there is no diversity of opinion among text writers, or in the reported cases. Another proposition of controlling importance in this case, advanced by all the commentators, and sanctioned by many decisions, has been denied by the high authority of the commission of appeals, which is, that, where the contract or transaction is but partially performed, there is a locus poenitentiae, and either party may rescind.

In deciding the present case, the commission of appeals (Dwight, Commissioner, dissenting) have held, that money paid by one party in part performance of an illegal transaction cannot be recovered back. where both parties are in pari delicto, and that no distinction exists, as to the right of recovery, between cases of partial and of entire performance. Notwithstanding the great respect which I entertain for the authority of the commission of appeals, I am constrained to differ from the conclusion thus reached, and must hold, in the language adopted by Mr. Justice Bradley (Thomas v. City of Richmond, 12 Wall. [79 U. S.] 349, 355), that "a recovery can be had, as for money had and received, where the illegality consists in the contract itself, and that contract is not executed," and that "in such case, there is a locus poenitentiae, the delictum is incomplete. and the contract may be rescinded by either party." This statement of law finds support in the early case of Walker v. Chapman, Lofft, 342, where the plaintiff had paid money to procure a place in the customs, but which he did not get, and brought suit to recover back the payment, and Lord Mansfield decided in his favor; and, upon the authority of this case, in the subsequent case of Lowry v. Bourdieu, Doug. 468, which was an action to recover a premium paid upon an insurance which was merely a gaming contract, but was brought after the event had happened upon which the insurance was to be paid, Buller, J., said: "There is a sound distinction between contracts executed and executory," and the plaintiff was defeated because the agreement was not executory. In Tappenden v. Randall, 2 Bos. & P. 467, an action was maintained to recover a payment upon an illegal contract, Heath, J., after adverting to the distinction between executed and executory contracts, stated by Mr. Justice Buller, saying: "I think there ought to be a locus poenitentiae, and that a party should not be compelled, against his will, to adhere to his contract." In Hastelow v. Jackson, 8 Barn. & C. 221, Littledale, J., says: "If two parties enter into an illegal contract, and money is paid upon it by one to the other, that may be recovered back before the, execution of the contract, but not afterwards;" and a recovery was allowed on this ground. Other cases which proceeded upon the same rule are Aubert v. Walsh, 4 Taunt. 293; Busk v. Walsh, Id. 290; Bone v. Ekless, 5 Hurl. & N. 925. The same doctrine has been recognized in our own courts. White v. Franklin Bank, 22 Pick. 181; Nellis v. Clark, 4 Hill, 424; Morgan v. Groff, 4 Barb. 524. And, in the latest English case,—Taylor v. Bowers, 34 Law T. (N. S.) 98S, decided in the court of appeal, in 1876,—the plaintiff was permitted to recover property transferred to defraud creditors, where the scheme was not fully carried out, Mellish, L. J., saying: "If money is paid, or goods are delivered, for an illegal purpose, and that purpose is afterwards abandoned and repudiated, I think the person paying the money or delivering the goods may recover; but, if he waits until the illegal transaction is carried out, or seeks to enforce it, he cannot maintain his action."

In opposition to these authorities, there is not a single case of which I am aware, sustaining the conclusion of the commission of appeals. The cases cited in support of that conclusion, in the opinion of Lott, Ch. of Commission, are Perkins v. Savage, 15 Wend. 412; Ex parte Bell, 1 Maule & S. 751; Howson v. Hancock, 8 Term R. 575; Burt v. Place. 6 Cow. 431; and Saratoga County Bank v. King, 44 N. Y. 87. In none of these cases did the question arise whether the plaintiff could succeed in an action in disaffirmance of an unexecuted illegal contract.

In conclusion, I concur in the dissenting opinion of Dwight, Commissioner, that "the rule is well stated in 2 Com. Cont. 109:" "If the contract continues executory, and the party paying the money be desirous of rescinding it. he may do so,. and recover back his deposit." A different rule would hold out an inducement to the parties to an illegal transaction to persevere in their efforts to violate the law.

That the transaction in furtherance of which the payment was made has never been consummated, is clear. Before any stock was issued, the scheme to issue it was rescinded by the defendant. The real question is—was the locus poenitentiae open to the plaintiff at the time he brought this suit? He had declined to respond to the second call, when the defendant rescinded. Can there be any doubt, that, up to the time of the abandonment of the scheme by the defendant, the plaintiff could have resorted to a court of equity, and restrained further proceedings, and vacated the proceedings already taken? The cases are numerous where courts of equity have interfered to prevent the consummation of a wrong, upon the motion of. a party who was instrumental in its inception. It is laid down by Judge Story (1 Eq. Jur. § 298) that, "where the agreements or other transactions are repudiated on account of being against public policy, the circumstance that the relief is asked by a party who is particeps criminis, is not, in equity, material. The reason is, that the public interest requires that relief should be given; and it is given to the public through the party. And, in these cases, relief will be granted not only by setting aside the agreement or transaction, but, also, in many cases, by ordering a repayment of any money paid under it." See, also, Neville v. Wilkinson, 1 Brown, Ch. (1st Am. Ed.) 548, note a.

If the plaintiff had received the fruits of the illegal transaction, in equity, as at law, he could not have recovered his payment, but, until then, not only could he have been heard, but restitution would have been made to him. The locus poenitentiae was open to the plaintiff so long as he was in a position to resort to a court of equity, and, surely, it was not closed to him by the action of the defendant in rescinding the illegal scheme. After that action on the part of the defendant, the plaintiff took the only steps he could take in repudiation of the transaction by demanding his money and bringing his suit. He is not to be denied relief upon the theory that the delictum was complete.

It is claimed that no payment was in fact made of the sum sought to be recovered by the plaintiff. A dividend of four per cent. had been declared by the defendant to its stockholders, among them to Sheehan, who transferred his interest to the plaintiff, and the dividend, instead of being paid in money, was credited, by agreement. as a payment of the first call under the subscription. Stockholders who did not subscribe for the new stock were paid in money. The evidence does not justify the inference that the dividend was a fictitious or fraudulent one. The defendant has treated the dividend as though actually paid, not only in crediting it as a payment, but in its dealings with the other stockholders, and it is now too late to question its validity. The plaintiff bought it of Sheehan, and paid for it in full. His rights are the same as though he had borrowed the money of Sheehan to make the payment of the call. Judgment is ordered for the plaintiff, for $13,980, with interest from February 20th. 1866.

[NOTE. This case was reviewed in error by the supreme court. Mr. Justice Woods, delivering the opinion of the court, considered whether, upon the hypothesis that the plan for the increase of ·the stock was illegal. there could be a recovery, upon the facts found by the circuit court. The learned justice observed that: "The making of the illegal contract was malum prohibitum. and not malum in se. There is no moral turpitude in such a contract. nor is it of itself fraudulent. however much it may afford facilities for fraud. The question presented is therefore whether. conceding the contract to be illegal, money paid by one of the parties to it in part performance can be recovered back; the other party not having performed the contract, or any part of it. and both parties having abandoned the illegal agreement before it was consummated. We think the authorities sustain the affirmative of this proposition. * * * We think, therefore, that the facts of this case present no obstacle to a recovery by Knowlton's administrators of the sum paid by him on the stock which had been subscribed for by Sheehan." The point was raised that the matter should be considered res judicata for the reason that it had been passed on by the court of appeals of New York. 57 N. Y. 518. But the learned justice held that this nowhere appeared in the record. and that upon error the court could not go outside of the record. The judgment of the circuit court was affirmed. Mr. Justice Harlan. dissenting. held that the contention of res judicata was good. 103 U. S. 49.]